**CARROLL BROADCASTING COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**West Georgia Broadcasting Company, Intervenor.**

**No. 14104.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 4, 1958.

Decided July 10, 1958.

---

Mr. Theodore M. Forbes, Jr., Atlanta, Ga., of the bar of the Supreme Court of Georgia, pro hac vice, by special leave of Court, with whom Mr. E. Smythe Gambrell, Atlanta, Ga., was on the brief, for appellant. Messrs. Harold L. Russell, Atlanta, Ga., and George Blow, Washington, D. C., also entered appearances for appellant.

Mr. Richard A. Solomon, Asst. General Counsel, Federal Communications Commission, with whom Mr. Warren E. Baker, General Counsel, Federal Communications Commission, was on the brief, for appellee.

Mr. Howard J. Shellenberg, Jr., Washington, D. C., entered an appearance for intervenor.

Before PRETTYMAN, BAZELON and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from the Federal Communications Commission and concerns a license for a standard broadcasting station. Carroll, our appellant, is an existing licensee. It unsuccessfully protested the grant of a license to West Georgia, our intervenor.

Carrollton and Bremen are towns in Georgia, twelve miles apart, with populations, respectively, of 8,600 and 2,300. Carroll's main studios are in Carrollton. West Georgia would broadcast from Bremen.

Three issues were prescribed by the Commission for the hearing upon the protest. One of these was upon the request of Carroll and was:

"To determine whether a grant of the application would result in such an economic injury to the protestant as would impair the protestant's ability to continued [sic] serving the public, and if so, the nature and extent thereof, the areas and populations affected thereby, and the availability of other broadcast service to such areas and populations."

But the Commission ordered "That said issue is not adopted by the Commission and that the burden of proceeding with the introduction of evidence and the burden of proof as to this issue shall be on the protestant." The case was remanded to the examiner for hearings on the added issue and a possible revised decision. The hearings were held, a further initial decision rendered by the examiner, exceptions taken, and oral argument had before the Commission.

On this issue the Commission held that "Congress had determined that free competition shall prevail in the broadcast industry" and that "The Communications Act does not confer upon the Commission the power to consider the effect of legal competition except perhaps" in Section 307(b) cases. Hence, said the Commission, "it is unnecessary for us to make findings or reach conclusions on this issue." Moreover, the Commission said, pursuant to other decisions by it, as a matter of policy "the possible effects of competition will be disregarded in passing upon applications for new broadcast stations".

It was settled by the Sanders Brothers case [1] that economic injury to an existing station is not a ground for denying a new application. But the Court, it seems to us, made clear the point that economic injury to a licensee and the public interest may be different matters. The Court said, for example: [2]

"*First.* We hold that resulting economic injury to a rival station is not, in and of itself, and apart from considerations of public convenience, interest, or necessity, an element the petitioner must weigh, and as to which it must make find-

---

1. Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940).

2. Id., 309 U.S. at page 473, 60 S.Ct. at page 696.

ings, in passing on an application for a broadcasting license."

And the Court said:[3]

"This is not to say that the question of competition between a proposed station and one operating under an existing license is to be entirely disregarded by the Commission, and, indeed, the Commission's practice shows that it does not disregard that question. It may have a vital and important bearing upon the ability of the applicant adequately to serve his public; it may indicate that both stations—the existing and the proposed—will go under, with the result that a portion of the listening public will be left without adequate service; it may indicate that, by division of the field, both stations will be compelled to render inadequate service. These matters, however, are distinct from the consideration that, if a license be granted, competition between the licensee and any other existing station may cause economic loss to the latter."

Thus, it seems to us, the question whether a station makes $5,000, or $10,000, or $50,000 is a matter in which the public has no interest so long as service is not adversely affected; service may well be improved by competition. But, if the situation in a given area is such that available revenue will not support good service in more than one station, the public interest may well be in the licensing of one rather than two stations. To license two stations where there is revenue for only one may result in no good service at all. So economic injury to an existing station, while not in and of itself a matter of moment, becomes important when on the facts it spells diminution or destruction of service. At that point the element of injury ceases to be a matter of purely private concern.

The basic charter of the Commission is, of course, to act in the public interest. It grants or denies licenses as the public interest, convenience and necessity dictate. Whatever factual elements make up that criterion in any given problem—and the problem may differ factually from case to case—must be considered. Such is not only the power but the duty of the Commission.

So in the present case the Commission had the power to determine whether the economic effect of a second license in this area would be to damage or destroy service to an extent inconsistent with the public interest. Whether the problem actually exists depends upon the facts, and we have no findings upon the point.

This opinion is not to be construed or applied as a mandate to the Commission to hear and decide the economic effects of every new license grant. It has no such meaning. We hold that, when an existing licensee offers to prove that the economic effect of another station would be detrimental to the public interest, the Commission should afford an opportunity for presentation of such proof and, if the evidence is substantial (*i.e.*, if the protestant does not fail entirely to meet his burden), should make a finding or findings.

The Commission says that, if it has authority to consider economic injury as a factor in the public interest, the whole basic concept of a competitive broadcast industry disappears. We think it does not. Certainly the Supreme Court did not think so in the Sanders Brothers case, supra. Private economic injury is by no means always, or even usually, reflected in public detriment. Competitors may severely injure each other to the great benefit of the public. The broadcast industry is a competitive one, but competitive effects may under some sets of circumstances produce detriment to the public interest. When that happens the public interest controls.

The Commission says it lacks the "tools"—meaning specifications of

3. Id., 309 U.S. at pages 475–476, 60 S.Ct. at pages 697–698.

authority from the Congress—with which to make the computations, valuations, schedules, etc., required in public utility regulation. We think no such elaborate equipment is necessary for the task here. As we have just said, we think it is not incumbent upon the Commission to evaluate the probable economic results of every license grant. Of course the public is not concerned with whether it gets service from A or from B or from both combined. The public interest is not disturbed if A is destroyed by B, so long as B renders the required service. The public interest is affected when service is affected. We think the problem arises when a protestant offers to prove that the grant of a new license would be detrimental to the public interest. The Commission is equipped to receive and appraise such evidence. If the protestant fails to bear the burden of proving his point (and it is certainly a heavy burden), there may be an end to the matter. If his showing is substantial, or if there is a genuine issue posed, findings should be made.

Perhaps Carroll did not cast its proffer of proof exactly in terms of the public interest, or at least not in terms of the whole public interest. It may be argued that it offered to prove only detriment to its own ability for service. We are inclined to give it the benefit of the most favorable interpretation. In any event, whatever proof Carroll had is already in the record. If it does not support a finding of detriment to the public interest, but merely of a detriment to Carroll, the Commission can readily so find.

■ The case must be remanded for findings on this point.

Carroll also makes a point about the Commission's findings in respect to West Georgia's basic financial qualifications and about a presumption that a father-in-law, a brother-in-law, and an uncle-in-law form part of the control exercised by a family unit. We find no error in these respects.

Remanded for further findings.