KGMO RADIO-TELEVISION, INC.,
Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Jerome B. Zimmer and Lionel D. Speidel,
d/b as Missouri-Illinois Broadcasting
Co. (KZIM), Intervenor.

No. 18064.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 25, 1964.

Decided May 22, 1964.

Mr. Thomas P. Brown, III, Washing-
ton, D. C., with whom Messrs. Charles.
S. Rhyne and Alfred J. Tighe, Jr., Wash-
ington, D. C., were on the brief, for ap-
pellant.

Mr. Ernest O. Eisenberg, Counsel, Fed-
eral Communications Commission, with.
whom Messrs. Max D. Paglin, General.
Counsel at the time the brief was filed,
and Daniel R. Ohlbaum, Associate Gen-
eral Counsel, Federal Communications.
Commission, were on the brief, for ap-
pellee. Mr. Henry Geller, General Coun-
sel, and Mrs. Ruth V. Reel and Mr. Joel.
H. Levy, Counsel, Federal Communica-
tions Commission, also entered appear-
ances for appellee.

Mr. Benedict P. Cottone, Washington,
D. C., for intervenor.

Before EDGERTON, Senior Circuit Judge,
and FAHY and DANAHER, Circuit Judges.

EDGERTON, Senior Circuit Judge:
Appellant KGMO Radio-Television,
Inc., licensee of a standard broadcast.
station in Cape Girardeau, Missouri, ap-
peals from the Federal Communications
Commission's denial without a hearing
of its petition for reconsideration of the
Commission's action in granting, also
without a hearing, to intervenor Zimmer
et al., a construction permit for a com-
peting station.[1] The Commission is au-

---

1. We are asked to review the Commission's action under § 402(b) (5) and (6) of the Communications Act of 1934, as amended, 47 U.S.C. § 402(b) (5) and (6), and under § 10 of the Administrative Procedure Act, 5 U.S.C. § 1009.

thorized to make,[2] and has made,[3] general rules governing petitions for rehearing and special rules for post-grant petitions, but did not base its denial of appellant's petition on post-grant standards.[4] Instead, it specifically applied its pre-grant standard and denied the petition on the theory that "the facts alleged * * * are too generally stated and are not sufficiently related to the conclusions drawn by the petitioner to show *prima facie* that a grant of the application would be inconsistent with * * * the public interest, convenience, and necessity, or to raise any substantial or material questions of fact concerning the effect" of the new station entering the market. 1 PIKE & FISCHER RADIO REG.2d 1, 2, 3.

Both the Commission and the appellant rely largely on Carroll Broadcasting Co. v. Federal Communications Commission, 103 U.S.App.D.C. 346, 349, 258 F. 2d 440, 443 (1958). There we held that in considering an existing licensee's protest against the grant of another license, "the Commission had the power to determine whether the economic effect of a second license in this area would be to damage or destroy service to an extent inconsistent with the public interest." We held that "when an existing licensee offers to prove that the economic effect of another station would be detrimental to the public interest,

the Commission should afford an opportunity for presentation of such proof * * *." We had no occasion to, and did not, undertake to say how detailed the protesting licensee's offer of proof must be in order to entitle him to a hearing.

In its petition to the Commission for reconsideration in the present case, appellant KGMO alleged

(1) That the area served suffers from substantial unemployment; quoting official figures, county by county, and concluding that the area "cannot provide support for a new advertising medium".

(2) That there are already ample "competitive media", namely six radio stations, one television station, three daily newspapers and ten weekly newspapers.

(3) That during KGMO's fiscal year ending August 31, 1962, its net loss from operations was $8,200.08. "Under new ownership the station is being slowly brought back to more favorable financial operating posture. For example, for the six months period ended February 28, 1963, the station showed a net profit from operations of $2,445.08, although for the month of February 1963 there was an operating loss of $293.00."

(4) That the applicant, now the intervenor, "estimated that the revenues of the [new] station for its first year of operation would be $46,000.00 * *.

2. The Communications Act of 1934 as amended provides in § 405 that after an order has been made by the Commission in any proceeding, "any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for rehearing * * * and it shall be lawful for * * * the Commission * * * in its discretion to grant such a rehearing if sufficient reason therefor be made to appear. * * * Rehearings shall be governed by such general rules as the Commission may establish," subject to certain exceptions.

3. Rules and Regulations of the Federal Communications Commission, §§ 1.84(b) and 1.84(c), 47 CFR 1.84(b) and 1.84(c) (renumbered on November 18, 1963, as §§ 1.06(b) and 1.06(c); see 28 FED.REG. 12422).

4. The Commission had done so in Springfield Television Broadcasting Corp. v. Federal Communications Commission, 117 U.S.App.D.C. 214, 328 F.2d 186 (1964). There the Commission found and this court agreed that the petitioners had failed to comply with Rule § 1.84(c) regarding post-grant petitions. An "administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

Cf. Valley Telecasting Co. v. Federal Communications Commission, 118 U.S. App.D.C. ——, 336 F.2d 914.

Assuming only 15% of such revenues came out of revenues now being earned by KGMO—this would result in operating losses to KGMO unless annual operating expenses were reduced. This would require that petitioner curtail or discontinue the services it has been providing at no cost to public service organizations" some of which are named, and also "discontinue various regularly scheduled programs * * *."

The petition also said: "Petitioner offers to prove that operation of the new station * * * would have an adverse economic effect on petitioner's station such as to cause losses of valuable services to the public and * * * would produce the result that neither licensee would be able to provide the services needed by the public in the area."

In denying appellant's petition for reconsideration, the Commission did not attempt an "all inclusive" statement but gave illustrations of "the type of information" it thought "necessary to support a *Carroll* issue", including the amount and trend of retail sales in the area, advertising revenue earned and advertising revenue available, whether some businesses could but do not advertise on radio, the cost of petitioner's public service programming, and the savings that might be made by dropping or moving it.

We think it is within the Commission's authority to require more information than appellant gave. But since appellant had no notice, in the Commission's past decisions or otherwise, that more would be required, the petition should not be denied on the ground that more was not furnished. We therefore remand the case to the Commission. Unless it decides the case on other grounds, it should permit appellant to amend and amplify the petition.[5] The Commission may in its discretion consider and act upon any of its Rules.

Remanded for further proceedings.

DANAHER, Circuit Judge (dissenting):

The appellant has here sought review of a Commission order dated July 10, 1963 which denied the appellant's petition for reconsideration and dismissed its request for stay of the Commission's grant to the intervenors on March 13, 1963. The intervenors' application for a construction permit had then been pending some nineteen months. Other facts follow.

Before the Commission in 1961 was an application filed in behalf of the appellant by the former owner of KGMO to change the frequency of its standard broadcast station from 1220 KC to 1550 KC. On August 21, 1961, the intervenors filed an application to construct a new standard broadcast station to utilize the 1220 KC frequency, but only in the event that the KGMO application for change in frequency should be granted. The intervenors gave prompt public notice of their application.

While the intervenors' application was thus pending, the former owner of KGMO sold his interest in the corporation to its present principals. The latter then, on February 13, 1962, filed an application for consent to such transfer which was approved by the Commission on April 6, 1962. At that time there was not only another standard broadcast station, KFVS, in Cape Girardeau, Missouri, a city of some 25,000 population, but the area was being served by some five other radio stations as well, as KGMO well knew.

On May 11, 1962, the Commission granted the KGMO application for a change of frequency to 1550 KC, thus leaving available to the intervenors the former KGMO frequency of 1220 KC.

Some seven months thereafter, on November 2, 1962, the Commission gave public notice that the intervenors' application was to be ready for processing as of December 11, 1962. The Commis-

---

5. In a brief dissenting statement, Chairman Henry said he "would have first elicited whatever factual data the petitioner might have in support of its allegations of public injury, and, after considering its response, act upon the subject petition for reconsideration."

sion's notice fixed December 10, 1962 as the "cut-off" date, and called attention of any party in interest who might desire to file section 309(d) (1) pleadings to section 1.359(i) of the Commission's rules relating to the time for filing and other requirements as to such pleadings. KGMO filed no petition to deny. No objections were voiced by KFVS or any other station.

After our decision in Carroll Broadcasting Co. v. Federal Commun. Com'n,[1] Congress caused hearings to be held in April, 1960, and thereafter adopted Public Law 86–752,[2] "An Act to promote the public interest by amending the Communications Act of 1934, to provide a pre-grant procedure in case of certain applications * * * and for other purposes." It is clear from House Report No. 1800[3] that Congress expected the Commission to use any procedural devices available to it to expedite its business and deemed its new "pre-grant" procedure adequate for the purpose.

The amendatory Act was designed to give interested parties an opportunity to learn of a pending application and to file a petition to deny as set forth in the new section 309(d) (1). A petition to deny any application, the new statute read, (apart from Commission regulations) might have been filed "at any time prior to the day of Commission grant thereof without hearing." *Congress—* not the Commission—provided next, that a petition to deny a pending application "shall contain specific allegations of fact sufficient to show that the petitioner is a party in interest and that a grant of the application would be prima facie inconsistent with" the public interest standards of section 309(a). "Such allegations of fact shall, except for those of which official notice may be taken, be supported by affidavit of a person or persons with personal knowledge thereof." Only if "a substantial and

material question of fact is presented or if the Commission for any reason is unable to find that a grant of the application would be consistent" with the public interest standards was the Commission to be required to proceed to hearings under section 309(e). So read the new Act.

This appellant had done nothing whatever about the application of the intervenors, although it had been pending some fourteen months from the date it was originally filed and some seven months after the Commission had licensed the appellant KGMO to operate on the 1550 KC frequency.

Accordingly, with no objections before it, and as the statute required, the Commission on March 13, 1963, without a hearing, granted the intervenors' application since it was "fully in the public interest."

On April 12, 1963, the new owners of KGMO for the first time appeared in opposition, then filing a Petition for Reconsideration and Request for a Stay of the Commission's March 13, 1963 award. The KGMO petition alleged that the Cape Girardeau area could not support a third standard broadcast station. Yet the record showed that the new owners within a few months had already converted the fiscal operations of KGMO from a loss status of $8,200 for the previous fiscal year, largely under the operation of the former owner, to a net profit situation of $2,445 for the 6-month period ending February 28, 1963.

When the Commission denied the petition for reconsideration, it announced in its Memorandum Opinion and Order that the petition had failed to comply adequately with the amended statute's requirement of specificity in allegations. The facts

"are too generally stated and are not sufficiently related to the con-

---

1. 103 U.S.App.D.C. 346, 258 F.2d 440 (1958).

2. 74 STAT. 889 amending as here applicable 47 U.S.C. § 309 and 74 STAT. 892 amending 47 U.S.C. § 405 (Supp. II, 1958).

3. 2 U.S.CODE CONG. & AD.NEWS, p. 3516 (1960).

clusions drawn by the petitioner [KGMO] to show *prima facie* that a grant of the application would be inconsistent with a finding by the Commission that it would serve the public interest, convenience and necessity, or to raise any substantial or material questions of fact concerning the effect of a third AM station entering the Cape Girardeau market."

The Commission further noted that

"The petitioner has only assumed that the proposed new operation might draw a portion of its revenues from the KGMO current revenues, thereby reducing KGMO's total income, but has not alleged facts tending to show the extent to which that might occur. \* \* \*4 The petitioner has not set forth the number of businesses or indicated the total advertising revenue available. \* \* \* No information was submitted as to whether there are businesses that could but that do not now advertise on radio. \* \* \* Nor has it alleged that no other revenue is available to replace any business which may be lost by KGMO due to this grant although, generally speaking, a new broadcast station generates some new business. In fact, KGMO has alleged no facts to support its assumption that it would suffer a decline in revenues due specifically to this grant. These failures to allege specific material and relevant facts take on added significance when viewed in the light

of successful operation in the area of other broadcast stations, both standard and television."

Where Congress had given opportunity to KGMO to avail itself of the pre-grant remedies so obviously available, KGMO did nothing. Certainly when reconsideration was thereafter sought under the provisions of section 405 of the Act, KGMO at the very least, should have set forth allegations as specific as Congress said were requisite to pre-grant consideration.

This is not a *Carroll Broadcasting Co.* situation.[5] In that case there already had been an adjudicatory hearing. An economic injury issue had been raised and a record had been made on that very point. We held that the Commission could not be sustained since it had declined to consider the economic injury in weighing the possible requirements of the public interest. We pointed out that the Commission had even said as a matter of policy *"the possible effects of competition will be disregarded* in passing upon applications for new broadcast stations."[6] (Emphasis added.) There were two competing interests from towns with respective populations of only 8,600 and 2,300. Thus, possible economic injury became a critical factor in weighing the public interest, measured in terms of an issue which the Commission had *refused* to consider. Therein lay the vice which we were bound to correct.

In the instant case there was no trap for the unwary. The new owners of KGMO obviously entered the competitive

---

**4.** The petition had alleged that revenue to be secured by the intervenors "would come out of revenues now earned by KGMO, thus causing KGMO operating losses *unless* there was a considerable reduction in annual operating expenses. *Assuming* only 15% of such revenues came out of revenues now earned by KGMO— this would result in operating losses to KGMO *unless annual operating expenses were reduced.* \* \* \*

"The *anticipated* reduction in income *would* also compel the petitioner to discontinue various *regularly scheduled programs* which are broadcast on a sustain-

ing basis *or* to move such programs to other time periods so as to make the more desirable time segments available for sale for commercial purposes." (Emphasis added.)

The very fact that KGMO found itself unable to supply affirmative factual allegations, specifically supported by oath demonstrates lack of compliance with the amended Act.

**5.** *Supra* note 1.

**6.** 103 U.S.App.D.C. at 348, 258 F.2d at 442.

field with their eyes wide open. They are not entitled to freedom from competition. Their own inaction raised no barrier to the Commission's taking precisely the steps it was bound to take under the amended sections 309 [7] and 405. The administrative process, difficult at best, should not further be shackled where KGMO for months had ignored the opportunity to protest and thereafter failed to meet the requirements of the statute. The Commission's rulings should be upheld.

---

7. We previously pointed out that "Congress, in amending Section 309 of the Act, obviously intended that oppositions to applications to grant construction permits should be filed before the grant, rather than after, as in the prior procedure."

Springfield Television Broadcasting Corp. v. F.C.C., 117 U.S.App.D.C. 214, 216, 328 F.2d 186, 188 (1964); and see Valley Telecasting Co., Inc. v. F.C.C., 118 U.S. App.D.C. ——, 336 F.2d 914.