394 F.2d 620
 75 P.U.R.3d 465
 CONLEY ELECTRONICS CORPORATION d/b/a Teleprompter of
Liberal, Inc., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, Southwest Kansas Television
Co., Inc., Kansas State Network, Inc.,
and KAKETVand Radio, Inc., Intervenors.
 No. 9503.
 United States Court of Appeals Tenth Circuit.
 April 22, 1968.
 
 Alan Raywid, Washington, D.C. (Donald P. MacDonald, Boulder, Colo., and John P. Cole, Jr., Washington, D.C., were with him on brief), for petitioner.
 William L. Fishman, Washington, D.C. (Donald F. Turner, Howard E. Shapiro, Henry Geller and John H. Conlin, Washington, D.C., were with him on brief), for respondents.
 Floyd E. Jensen, Wichita, Kan. (Paul Dobin, and Roy F. Perkins, Jr., Washington, D.C., were with him on brief), for intervenors.
 Before MURRAH, Chief Judge, HILL, Circuit Judge, and CHRISTENSEN, District Judge.
 MURRAH, Chief Judge.
 
 
 1
 Petitioner, Conley Electronics Corporation, the owner and operator of a community antenna television (CATV) system in Liberal, Kansas, seeks review under 402(a) of the Communications Act of 1934, as amended, 47 U.S.C. 402(a), of a memorandum opinion and order of the Federal Communications Commission denying Conley's petition for a waiver of the nonduplication requirements of the Commission's rules, 47 C.F.R. 74.1103(f). The waiver request was denied by the Commission without a hearing. Conley (1) challenges the validity of the nonduplication rule, asserting that it is outside the jurisdiction of the Commission and violative of the First Amendment; and (2) contends that the failrue to provide a hearing is violative of various procedural statutes and deprives him of due process of law.
 
 
 2
 A brief review of the development and regulation of CATV may prove beneficial to an understanding of the questions involved. A CATV system is a facility which, by means of high antennae, picks up the signals broadcast by one or more television stations and redistributes such signals by wire or cable to the homes of subscribing members of the community served by the system. First Report and Order, 38 F.C.C. 683, 684 (1965). Subscribers pay an initial installation charge and a monthly fee for this service. Some systems use microwave relay stations to relay signals to the CATV antennae. During the early years of its development, CATV was used almost exclusively to bring television signals to areas where the mountainous terrain made reception difficult or the sparse population made the operation of a local station economically unfeasible. In subsequent years, however, CATV systems expanded the scope of their service and began distributing programs originating from distant stations into areas which already had local television stations. The result was a unanimous cry for regulation by the local broadcasters, who feared that an enlargement of the number of stations available in a community would splinter the market, thereby causing a decreas in audience size and a reduction in the advertising revenues of the local stations. See Note, The Wire Mire: The FCC and CATV, 79 Harv.L.R. 366 (1965); Note, CATV and Copyright Liability, 80 Harv.L.R. 1514 (1967).
 
 
 3
 Following an initial disclaimer of jurisdiction, 26 F.C.C. 403, 427-28 (1959), the Commission, after a general rulemaking proceeding which attracted numerous and voluminous comments from interested parties, asserted jurisdiction over CATV systems using microwave facilities to transmit their signals, and adopted certain rules involving their operation. First Report and Order, supra. At the same time, a Notice of Inquiry and Notice of Proposed Rule Making, 1 F.C.C.2d 453 (1965), was released looking toward regulation of those systems not using microwave relay facilities. Again, formal and informal comments were accepted by the Commission. Subsequently, in March 1966, the Commission asserted jurisdiction over all CATV systems and adopted applicable rules. Second Report and Order, 2 F.C.C.2d 725 (1966). These rules provide, inter alia, that CATV systems (1) must, upon request, carry the signals of local stations; and (2) cannot, on the same day, carry a signal which duplicates a program of a local station. 47 C.F.R. 74.1103(a), (f). These rules are commonly referred to, respectively, as the 'carriage' and 'nonduplication' rules. We are concerned only with the nonduplication rule.
 
 
 4
 The Commission's decision to adopt the rules rested on its determination that failure to carry the signals of the local stations and duplication of their programs on the same day constituted 'unfair competitive practices' on the part of the CATV systems. The Commission was concerned lest CATV operations ultimately drive out television broadcasting service, thus depriving the public as a whole of free service, service to outlying areas,[1] and local service with local control and selection of programs. First Report and Order at p. 700. The Commission concluded, therefore, that in view of its statutory obligation under the Communications Act to make television service available, so far as possible, to all people of the United States on a 'fair, efficient and equitable' basis, 47 U.S.C. 307(b), adoption of CATV rules was necessary in the public interest.
 
 
 5
 In addition to the carriage and nonduplication rules, the Commission adopted Rule 74.1109, 47 C.F.R. 74.1109, which provides that 'upon petition by a CATV system, * * * the Commission may waive any provision of the rules relating to the distribution of television broadcast signals by CATV systems * * *.' The rule requires, however, that the waiver petition 'state fully and precisely all pertinent facts and considerations relied upon to demonstrate the need for the relief requested and to support a determination that a grant of such relief would serve the public interest.'
 
 
 6
 Conley's CATV system has been in operation in Liberal, Kansas since 1956. It carries the signals of six television stations into the homes of 2,100 subscribers. Three of these stations are admittedly so-called 'local' stations located within 60 miles of Liberal. The other three are distant stations, located approximately 140 miles away in Amarillo, Texas. The signals from the Amarillo stations are relayed by microwave facilities to a point where they are received by Conley and retransmitted to the subscribers.
 
 
 7
 In June 1966, two months after the effective date of the Commission's CATV rules, Conley filed a petition for a waiver of the nonduplication rule. Under that rule, petitioner would be required to delete those programs from the Amarillo stations which duplicate the programs broadcast by the local Kansas stations if released on the same day. Conley based its waiver request upon the grounds, inter alia, that operation of its CATV system had no discernible adverse economic effect on the three local Kansas television stations; that, on the other hand, compliance with the rule might have an adverse financial impact on the petitioner's CATV system and might lead to a disruption of service; that, moreover, the Commission had no authority to adjudicate by rule matters of 'unfair competition'; and that, in any event, the rule should not be applied without first affording Conley a hearing.
 
 
 8
 In denying the waiver request, the Commission held that the reasons for applying the nonduplication rule without a specific showing of adverse economic impact on the local station had been carefully explained in the Second Report and Order; and that Conley had supplied no factual support for its allegation of disastrous financial impact or disruption of service. The Commission also rejected Conley's challenge of authority to issue the rule, and held that Conley's threshold factual allegations showed no necessity for a hearing.
 
 
 9
 When the Commission subsequently denied Conley's petition for reconsideration, this petition for review was filed, and we granted Conley's motion for a stay.
 
 
 10
 Due to the manner in which Conley has intermixed and proliferated his various contentions, it is difficult to discern exactly what errors are asserted. We will, however, consider and dispose of those questions which we are able to glean from the petitioner's arguments.
 
 
 11
 Conley's initial contention seems to be that the nonduplication rule is invalid because: (1) it rests upon a finding by the Commission that CATV duplication constitutes 'unfair competition', a determination that the Commission has neither the authority nor the jurisdiction to make; and (2) it constitutes an improper restraint on free speech in violation of the First Amendment. In support of his first assertion, Conley argues that the rule is in conflict with F.C.C. v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), where the Supreme Court emphasized that 'the (Communications) Act recognizes that the field of broadcasting is one of free competition.' Id. at 474, 60 S.Ct. at 697.
 
 
 12
 We cannot agree with Conley's postulate. Indeed, we think the rule is not only consistent with Sanders, but affirmatively implements it. In Sanders the Court held that since it is not the purpose of the Act to protect a licensee against competition, economic injury to an existing station, standing alone, is not a ground for denying the license application of a new station. But the Court was quick to add that the question of competition becomes vitally important, and should not be disregarded by the Commission, when economic injury to an existing station may result in a diminution or reduction of broadcast service to the public. See Carroll Broadcasting Co. v. F.C.C., 103 U.S.App.D.C. 346, 258 F.2d 440 (1958). As we have seen, it was precisely this prospect of an overall reduction of television service, hence injury to the public, which prompted the Commission to adopt its CATV rules. We hold that the nonduplication rule was a reasonable exercise of the Commission's authority. And see Wheeling Antenna Co., Inc. v. United States, 391 F.2d 179 (4 CA, Feb. 28, 1968).
 
 
 13
 As to Conley's claim that the nonduplication rule treads upon its First Amendment right to freely distribute available television signals, the short answer is that the argument comes too late. This contention was not presented before the Commission and, as Chief Justice Vinson emphasized in Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136, 'A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.' Id. at 155, 67 S.Ct. at 251. See also WLIL, Inc. v. F.C.C., 122 U.S.App.D.C. 246, 352 F.2d 722 (1965); Florida Gulfcoast Broadcasters, Inc. v. F.C.C., 122 U.S.App.D.C. 250, 352 F.2d 726 (1965); Presque Isle TV Co., Inc. v. United States, 387 F.2d 502 (CA 1, Dec. 18, 1967). Moreover, the argument is without merit. Several courts have rejected similar contentions in upholding a denial by the Commission of a license to a microwave carrier seeking to serve a CATV system. See Carter Mountain Transmission Corp. v. F.C.C., 116 U.S.App.D.C. 93, 321 F.2d 359 (1963); Idaho Microwave, Inc. v. F.C.C., 122 U.S.App.D.C. 253, 352 F.2d 729 (1965). See also National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). Conley seeks to distinguish those cases on the ground that they were concerned with licensing rather than the direct regulation of CATV systems. We think, however, that the cases are indistinguishable. In both situations what is involved is reasonable regulation in the public interest. Cf. Buckeye Cablevision, Inc. v. F.C.C., D.C. Cir., 387 F.2d 220 (1967).
 
 
 14
 This brings us to what appears to be the best of Conley's case-- that the Commission's failure to provide for an evidentiary hearing before ordering the petitioner to comply with the nonduplication rule violated the requirements of the Communications Act and the Administrative Procedure Act, and deprived him of due process of law.
 
 
 15
 Preliminarily, Conley seems to suggest that he is entitled to a hearing under the following provisions of the Communications Act: 309(e), which provides for a hearing upon any application for a license where there exists a substantial and material question of fact; 303(m)(2), which requires a hearing prior to the suspension of an operator's license; 312(c), which provides for a hearing prior to revocation of a license; and 316, which bars any modification of a license without a hearing. The short answer is that Conley, by its own admission, is neither an applicant for a license nor a licensee. It is clear, therefore, that the various statutory provisions relied upon are inapplicable by their own terms.
 
 
 16
 Avoidance of this conclusion is sought by the apparent suggestion that the Commission, through its CATV rules, is, in fact, exercising 'complete licensing authority' over petitioner's business, and should, therefore, prior to modifying that business, afford Conley all the procedural rights normally afforded licensees. The foible in this argument is that even if Conley were a licensee of the Commission, it would have no automatic right to a hearing under any of the cited provisions of the Communications Act.
 
 
 17
 In United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), the FCC amended certain of its rules to provide, in effect, that a license for a television broadcast station would not be issued to any party having an interest in five such stations. On the same day Storer's pending application for an additional station was summarily dismissed because he already had five stations. Storer sought review of the Commission's order, contending that the rules, as amended, were in conflict with the mandates of 309 of the Communications Act that applicants must have a full hearing before denial of an application for a license. The Supreme Court held that although 309 did require a 'full hearing', this did not withdraw from the Commission the rule making authority necessary for the orderly conduct of its business. In that respect, the Court declared:
 
 
 18
 'We read the Act and Regulations as providing a 'full hearing' for applicants who have reached the existing limit of stations, upon their presentation of applications conforming to (the Commission's waiver rule), that set out adequate reasons why the Rules should be waived or amended. The Act, considered as a whole, requires no more. We agree with the contention of the Commission that a full hearing, such as required by (309) * * * would not be necessary on all such applications. As the Commission has promulgated its Rules after extensive administrative hearings, it is necessary for the accompanying papers to set forth reasons, sufficient if true, to justify a change or waiver of the Rules. We do not think Congress intended the Commission to waste time on applications that do not state a valid basis for a hearing. If any applicant is aggrieved by a refusal, the way for review is open.' Id. at 205, 76 S.Ct. at 771.
 
 
 19
 Storer was followed in Federal Power Commission v. Texaco, 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964). There the FPC adopted a rule prohibiting certain pricing provisions in the rate schedules of independent producers of natural gas, and subsequently rejected, without hearing, applications for certificates of public convenience and necessity which contained rate schedules with the prohibited provisions. We held that the Commission's rule could not be applied to deprive a certificate applicant of the adjudicatory hearing guaranteed him by 7 of the Natural Gas Act. Texaco, Inc. v. F.P.C., 10 Cir., 317 F.2d 796 (1963). The Supreme Court taught us, however, that 'the statutory requirement for a hearing under 7 does not preclude the Commission from particularizing statutory standards through the rule-making process and barring at the threshold those who neither measure up to them nor show reasons why in the public interest the rule should be waived.' 377 U.S. 33, 39, 84 S.Ct. 1105, 1109.
 
 
 20
 It is thus clear that when rules of general application are promulgated in a valid rule-making proceeding, as was done here, they may be generally applied by the Commission without individual adjudicatory hearings unless a party, claiming to be aggrieved, sets forth reasons why the public interest would be served by an individualized waiver of the rule. See California Citizens Band Ass'n v. United States, 9 Cir., 375 F.2d 43 (1967); American Airlines, Inc. v. Civil Aeronautics Board, 123 U.S.App.D.C. 310, 359 F.2d 624 (1966); Interstate Broadcasting Co. v. F.C.C., 116 U.S.App.D.C. 327, 323 F.2d 797 (1963). Conley claims its petition comes within the teachings of Storer and Texaco, and also within the requirements of Rule 74.1109, and sets forth facts entitling it to a waiver or at least a hearing. Suffice it to say that after carefully examining Conley's petition, we agree with the Commission that neither was justified. Some of the reasons listed by Conley were questions already considered and rejected by the Commission at the rule-making proceeding leading to the adoption of the CATV rules. The remaining allegations failed to factually demonstrate that the public interest would be served by exempting Conley from the sweep of the nonduplication rule. In short, we do not think Conley stated a claim upon which relief could be granted.
 
 
 21
 Nor is the Administrative Procedure Act helpful. It imposes no requirement of an adversary hearing before an agency, but only specifies the procedure to be followed when a hearing is required by some other statute. 5 U.S.C. 554. See also Webster Groves Trust Co. v. Saxon, 8 Cir., 370 F.2d 381 (1966).
 
 
 22
 The net result of all this is said to deprive Conley of the full use of its property, and that to do this without a hearing violates due process of law. The due process issue was not specifically raised or treated in either Storer or Texaco, but we think it is fully answered by the Second Circuit in Air Lines Pilots Ass'n, International v. Quesada, 276 F.2d 892 (1960). There the Administrator of the Federal Aviation Agency promulgated a rule barring individuals over 60 years of age from serving as aircraft pilots. The pilots complained that the regulation deprived them of property in their pilots' licenses without due process. Chief Judge Lumbard rejected this contention:
 
 
 23
 'Nor does the regulation violate due process because it modifies pilots' rights without affording each certificate holder a hearing. Administrative regulations often limit in the public interest the use that persons may make of their property without affording each one affected an opportunity to present evidence upon the fairness of the regulation. See United States v. Storer Broadcasting Co., supra; Bowles v. Willingham, 1944, 321 U.S. 503, 519-520, 64 S.Ct. 641, 88 L.Ed. 892. Obviously, unless the incidental limitations upon the use of airmen's certificates were subject to modification by general rules, the conduct of the Administrator's business would be subject to intolerable burdens which might well render it impossible for him effectively to discharge his duties. All changes in certificates would be subject to adjudicative hearings, including appeals to the courts, and each pilot whose license was affected-- here some 18,000-- might demand to be heard individually. * * * All private property and privileges are held subject to limitations that may reasonably by imposed upon them in the public interest.' Id. at 896.
 
 
 24
 See also Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).
 
 
 25
 Nothing said here or in the case law forecloses a hearing on a petition which sets forth 'reasons, sufficient if true, to justify a change or waiver of the Rules' in the public interest. We simply hold that no such reasons were shown by Conley's petition.
 
 
 26
 Finally, Conley seems to contend that, in any event, it was entitled to a hearing under 312 of the Communications Act, which authorizes the Commission to enter a cease and desist order only after a hearing to a party who: '(1) has failed to operate substantially as set forth in a license, (2) has violated or failed to observe any of the provisions of this chapter * * *, or (3) has violated or failed to observe any rule or regulation of the Commission * * *.' Conley says that the Commission's order directing it to comply with the nonduplication rule 'within thirty (30) days' is tantamount to a cease and desist order under 312. The short answer is that Conley did not fail to observe the provisions of a license or a statute. Nor did he violate the nonduplication rule, since the filing of his waiver petition automatically stayed the applicability of the rule. See 47 C.F.R. 74.1109(h). Conley was not a party to whom a cease and desist order could issue. Rather than a cease and desist order, we think the Commission's order was merely a directive giving Conley notice of a date certain when it would be expected to be in compliance with the nonduplication rule.
 
 
 27
 Affirmed.
 
 
 
 [1]
 Because of the prohibitive cost of extending the cables beyond heavily built-up areas, CATV systems cannot serve many persons reached by television broadcast signals. First Report and Order at p. 699