562 F.2d 1182
 3 Media L. Rep. 1586
 TREASURE VALLEY CATV COMMITTEE, Petitioner,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents,
Boise Valley Broadcasters, Inc., Idaho Television
Corporation, KTVB, Inc., Intervenors.
UNITED CABLE TELEVISION CORPORATION, Petitioner,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents,
Boise Valley Broadcasters, Inc., KTVB, Inc., Idaho
Television Corporation, Intervenors.
 Nos. 75-1729 and 75-2145.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 13, 1977.
 
 John P. Southmayd, Fisher, Wayland & Cooper, Washington, D. C., Roger E. Zylstra, Cole, Zylstra & Raywid, Washington, D. C., argued, for petitioners.
 Julian R. Rush, Jr., Federal Communications Commission, Washington, D. C., argued, for respondents.
 On Appeal for Review of Orders of the Federal Communications Commission.
 Before BROWNING, Chief Judge, TUTTLE,* and ANDERSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 These petitions for review appeal from orders of the Federal Communications Commission (FCC) which granted to the petitioner, United Cable Television Corporation permission to establish cable TV to the people of fourteen communities of Treasure Valley, located in southwestern Idaho and southeastern Oregon, but limited, in accordance with outstanding FCC regulations, the number of television signals which the respective local cable TV companies could carry to their subscribers. The parties are the Treasure Valley CATV Committee, an organization composed of representatives from the fourteen communities in the area which sought the development of cable TV, and United Cable Television Corporation, a proposed operator of cable TV in the area, three local Idaho television station licensees as intervenors and the FCC. Both petitioners seek the same relief. They contend that the FCC illegally restricted the proposed Treasure Valley community outlets too severely as to the signals they might carry and, in any event, they attack the administrative handling of their application on the ground that such restrictions as might be imposed could be validly made a part of the Commission's order only after a hearing on the merits.
 
 I. Factual Background
 
 2
 The Committee was formed for the purpose of bringing cable television to the valley. The plan called for fourteen community antenna installations, one for each of the communities involved. The Committee received bids from United Cable[1] and from a joint venture which consisted of the two local television stations which are now parties intervenor here. The Committee awarded the franchise to United Cable which made its application to the Commission for the necessary certificate to operate. Thereafter, the two local stations and competing applicants for a third station applied to the FCC for special relief, which under the regulations at that time resulted in an automatic stay of the proposed CATV activity.
 
 
 3
 While these developments were proceeding in Idaho and Washington the FCC was struggling with the whole question of CATV regulation. The Supreme Court held in 1968 that the FCC did have jurisdiction over CATV systems, United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968). In 1972, the FCC promulgated new regulations for CATV, which provided for, inter alia, a limitation in the number of television signals which a CATV system could carry. Cable Television Report & Order, 36 F.C.C.2d 143 (1972). With regard to smaller television markets, i. e., those outside major population areas (such as the fourteen markets involved here), the FCC published the following regulation:
 
 
 4
 "A cable television system operating in a community located in whole or in part within a smaller television market, as defined in § 76.5, shall carry television broadcast signals only in accordance with the following provisions:
 
 
 5
 (b) Any such cable television system may carry sufficient additional signals so that, including the signals required to be carried pursuant to paragraph (a) of this section, it can provide the signals of a full network station of each of the major national television networks, and of one independent television station. . . ."
 
 
 6
 Although filed pursuant to § 76.11 of the Rules, the applications for certificates for the Treasure Valley communities proposed to carry on CATV in all fourteen communities the signals of three Boise television stations and three Salt Lake City network affiliated stations, plus the signal of the independent station, KWGN-TV in Denver. In addition, it proposed to carry in the four communities outside any market the signals of the five Portland, Oregon television stations three of which are network affiliated commercial stations, and one of which is an educational station. United contended in its application that all fourteen of its applications were "fully consistent with the new rules released February 3, 1972." The applications were opposed by the two local stations and by the permittee of the the third proposed local station, which in fact was licensed during the pendency of these applications. The only issue of importance here raised by the local stations is their contention that United Cable's request to carry the signals of the three Salt Lake City stations, which were affiliated with the three national networks, in addition to the signals of the three local stations so affiliated, contravened the provisions of 47 C.F.R. § 76.59b quoted above.
 
 
 7
 The FCC found that ten of the fourteen Treasure Valley communities were located within the smaller television market of Nampa, Idaho (home of the third and newest station) that this market already had three network stations, whose signals United Cable proposed to carry on its system; and that therefore § 76.59 precluded the carriage of the Salt Lake City station's signals. It held that the signal of the independent, that is, the non-network-affiliated Denver station, could be carried. The FCC also found that four of the Valley communities were outside any television market, and that therefore all of United Cable's proposed signal requests as to them would be granted. The FCC expressly noted that, with regard to the request for signals which were denied, United Cable had not sought a waiver of the signal carriage regulation which limited the number of signals.
 
 
 8
 Both United Cable and the three local stations sought reconsideration of the FCC's order. In addition, the Committee, which had not intervened in the original proceeding, sought reconsideration in support of United Cable's request.
 
 
 9
 In its motion for reconsideration, United Cable raised the following points:[2] (1) the FCC erred in denying United Cable's full applications without a hearing; (2) the signal carriage rules for smaller television markets were discriminatory, unsupported by evidence of harm to local stations and therefore should be waived in this case; and (3) the local stations had engaged in anti-competitive behavior, by seeking to establish their own CATV system, and by opposing United Cable's applications when the Committee awarded the latter system all of the franchises. United Cable offered to limit its requested Salt Lake City signal carriage to one composite channel which would carry only the non-network programming of all three stations. In support of its position, United presented written materials which it claims showed that the allowance of more than one distant signal in other areas of the country had had no harmful economic impact upon other local stations. It made no showing with respect to the economic impact on it if the restrictions imposed by the FCC should stand.
 
 
 10
 Responding to the motion for reconsideration, the local stations raised several procedural objections to United Cable's and the Committee's petitions; denied anti-competitive intent; and argued that the four communities outside any market should not enjoy greater CATV coverage than the ten communities within the smaller market. They also responded to United Cable's charges that the signal carriage rules were not based on fact with the statement that such allegations could be considered properly only in a rulemaking, not in an adjudicatory, proceeding.
 
 
 11
 The FCC affirmed its earlier order. It noted in particular that the local station's opposition to United Cable was not anti-competitive in the sense that it was an adequate ground for granting United's applications in full; that United Cable's evidence of lack of economic hardship to local stations were the full signal carriage request to be granted was insufficient to satisfy the waiver requirements or to require an evidentiary hearing; that a challenge to the signal carriage rules should be made in a rulemaking proceeding and not in a motion for reconsideration which for the first time sought a waiver to the rules; and finally, that the FCC and not local governments, had the final say
 
 
 12
 over the extent of CATV coverage. II. Partial Denial of
 
 
 13
 United Cable's Application Without a Hearing
 
 
 14
 Briefly stated, United Cable argues that the FCC erred in not granting it an evidentiary hearing, or at least in not "seriously" considering its waiver request, since it claims that it had shown, by written submission, that the local stations would not suffer economic harm if its full signal carriage request were granted. A second prong to this argument is that the sufficiency of its allegations as to lack of economic harm to the local stations should be viewed in light of the fact that FCC's distant signal carriage rules, quoted above, were not based on solid evidence, but were instead worked out as a temporary expedient on inconclusive data for the announced purpose of letting the CATV industry commence operations with some restrictions.
 
 
 15
 The FCC counters by pointing out that during the two years pendency of the applications, United Cable did not request a hearing, but in fact indicated that it wished to have the matter disposed of on the written documents. Furthermore, the FCC points to the fact that the applications were on their face subject to disallowance because they conflicted with the existing rules. Nowhere in the applications did United Cable request a waiver of the rules, a procedural device which is authorized by the rules themselves.
 
 
 16
 The real thrust of United Cable's argument is that a hearing was required to determine whether the ten Treasure Valley communities within the smaller television market of Nampa, Idaho, could accommodate more than the one distant signal allowed by 47 C.F.R. § 76.59. United Cable's first basis for contending that a hearing was required is that 47 U.S.C. § 309(e) requires it. While it is true that this section requires a hearing under certain circumstances in broadcast licensing proceedings, this is not such a proceeding. This Court has already held that § 309(e) does not apply to CATV. Iacopi v. FCC, 451 F.2d 1142, 1149 (9th Cir. 1971); Total Telecable, Inc. v. FCC, 411 F.2d 639, 644 n. 6 (9th Cir. 1969).
 
 
 17
 United Cable's second ground in support of its argument that it was entitled to a hearing is that the so-called "Carroll" doctrine requires it. This Court has recently described the Carroll doctrine in the following terms:
 
 
 18
 "Carroll held that, in some circumstances, before an application for a license can be granted a section 309 hearing is required 'to determine whether the economic effect of a second license in this area would be to damage or destroy service to an extent inconsistent with the public interest,' (Carroll Broadcasting Co. v. Federal Communications Commission, 103 U.S.App.D.C. 346, 258 F.2d 440) 258 F.2d at 443. As the Carroll court plainly stated, the doctrine of that case is simply a particularization of the public interest standard: 'The basic charter of the Commission is, of course, to act in the public interest. It grants or denies licenses as the public interest, convenience and necessity dictate. Whatever factual elements make up that criterion in any given problem and the problem may differ factually from case to case must be considered.' Id. Carroll recognized that sometimes competition may serve the public interest; sometimes it may not. If in a proceeding under section 309 the Commission is presented with a substantial showing that it will not, appropriate findings should be made. Id., 258 F.2d at 444."
 
 
 19
 Washington Utilities & Transp. Comm. v. F.C.C., 513 F.2d 1142, 1166 (9th Cir. 1975), cert. denied 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).
 
 
 20
 United's reliance upon Carroll is misplaced. In the first place, Carroll applies, by its own terms, to proceedings under 47 U.S.C. § 309(e). As we have just noted, CATV proceedings are not governed by § 309(e). Further, Carroll suggests that it is the opponents of granting a particular license, not the proponents, who may obtain a hearing upon a proper showing of economic harm. Here, it is the proponents who claim that they are entitled to a hearing, even though they did not request one prior to the publishing of the order appealed from and, finally, rather than this being an application for certification pursuant to regulations, the situation in Carroll, United seeks a waiver of the regulations.
 
 
 21
 United Cable's other ground to support its argument that it is entitled to a hearing is that the denial of a hearing is an abuse of discretion under 47 C.F.R. § 76.7. United makes the bald assertion that there is no factual basis to support the basic CATV regulation. § 76.59 and that, therefore it has something less than full status as a regulation. United says it is to be likened to a rebuttable presumption and that upon a showing of slight evidence to rebut such presumption it is entitled, if not outright waiver, at least to an evidentiary hearing on its request for a waiver.
 
 
 22
 Bearing in mind the fact that it was only by the filing of its petition for rehearing that United requested a waiver, we look to the economic data supplied by United Cable to support its petition for rehearing in order to determine the correctness of the Commission's reasoning in denying the petition. As to United Cable's direct attack on the validity of the regulation, the Commission was certainly correct in saying "the proper forum for challenging the validity of the Commission's signal carriage rules is a rule-making proceeding conducted pursuant to § 1.401 of the Rules."
 
 
 23
 It is true that in publishing the Rules, the Commission noted that they were tentative and that they were based on information that could not conclusively forecast the future. Nevertheless, as is conceded by United Cable in one of its briefs, the Rules are the law until subsequently changed by a rulemaking procedure. Thus, there remains only the question whether a request for a waiver of the Rules could be denied by the Commission without a hearing.[3]
 
 
 24
 Although no cases involving a requested waiver of the distant signal carriage rules have been cited to us, numerous cases have discussed waiver of the non-duplication rules.[4] No reason would appear to distinguish the procedural requirements for obtaining a waiver of the distant signal carriage rules and the non-duplication rules. The majority of cases have upheld the FCC's denial of a hearing and waiver requests under the latter. See Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 242-243 (9th Cir. 1969); Total Telecable, Inc. v. FCC, 411 F.2d 639, 643-644 (9th Cir. 1969); Wheeling Antenna Co. v. United States, 391 F.2d 179, 182 n. 6 (4th Cir. 1968). This Court stated the basic justification in Total Telecable, supra, at 643:
 
 
 25
 "Like a court, an agency such as the Commission can dispose of a petition without a hearing if the facts alleged, taken as true, would not warrant the relief requested. (Citations omitted)"
 
 
 26
 In one case involving a waiver of the non-duplication rule, this Court remanded for an evidentiary hearing. Cable TV of Santa Barbara, Inc. v. FCC, 428 F.2d 672 (9th Cir. 1970). There, there seemed to be a factual dispute of the "quality, present and potential, of the KCOY signal at the headend of the Cable TV system," apparently a matter susceptible of proof.
 
 
 27
 We must determine whether the written submissions by United Cable to the FCC on its petition for rehearing was such that the FCC abused its discretion in not granting a waiver or at least an evidentiary hearing. Once again it seems quite appropriate in determining what showing United Cable would have to make here to compare this with the waiver requirements under the non-duplication rules which have already been dealt with by this Court.[5] As to these this Court has said:
 
 
 28
 "It would seem, then, that a CATV operator seeking a waiver should show two things in its petition: (1) the economic effect of waiver on the local TV station, here KVOS, and (2) that in the petitioner's, here Total's, case, nonduplication will have an unduly disruptive effect on its service."
 
 
 29
 Total Telecable, supra, 411 F.2d at 643.
 
 
 30
 The showing that United Cable relies on as being sufficient to require a hearing before the Commission could rule adversely to it is stated in its brief to this Court:
 
 
 31
 "United Cable first examined all 114 smaller markets to see which had cable operations in their core cities and, of those which were already authorized to carry more distant signals than that allowed by the smaller market rules. United Cable found that 87 of the smaller markets are already subject to cable carriage of at least two distant signals in excess of that allowed by the rule. United Cable next examined the financial status of the five television markets above and below Boise to see if there was evident a correlation between cable operations in each market and broadcaster financial health. United Cable found no such correlation. It next examined all smaller markets to see if there was some correlation between cable growth nationally and broadcaster financial health nationally and still could find no correlation. United Cable presented these facts to the Commission with which it argued, along with the fact that the two original stations had applied for their own cable operations carrying a great number of distant signals, that no harm would come to the local stations by United Cable's modest proposal for carriage of just two distant signals."
 
 
 32
 United Cable offered no evidence to meet the second prong of the test specified in the Telecable case, supra. That is to say United Cable offered no evidence to show that its operation would be viable, economical or successful unless the waiver should be granted.
 
 
 33
 The Commission's order denying the petition for reconsideration referred to the foregoing tender first in footnote 2 and finally in paragraph 8 of the opinion. Footnote 2 reads as follows:
 
 
 34
 "In support of its argument concerning the validity of the Commission's smaller market signal carriage rules, United Cable supplies data which indicates that of the 101 smaller television markets (out of a total of 114) which have a cable television system in their core city or cities, 76.8% of them (76) carry more than one distant independent signal because of the 'grandfathering' provisions of § 76.65 of the rules. We note that this data fails to take into account the numerous non-core city cable systems which are located within a smaller television market and which are operating with a signal carriage compliment consistent with § 76.59 of the rules."The opinion dealing with this matter reads as follows:
 
 
 35
 "Moreover, United Cable's data, if found to be accurate, could only be considered in connection with those cable systems proposed for the core cities of Boise and Nampa, Idaho, see footnote 2, supra. United Cable's belated request for a waiver of the signal carriage rules in order to carry the non-network programming of the Salt Lake City stations on a composite channel must be denied. United Cable has submitted no financial or statistical evidence to substantiate its claim that cable television operations in the Boise area will be foreclosed if it is able to provide subscribers with only those signals already authorized nor has United Cable demonstrated that the additional programming provided by a non-network channel would be so substantial as to determine the viability of cable television operations in the area. (footnote omitted)."
 
 
 36
 While United Cable complains that the quoted language does not indicate that the FCC had paid careful attention to each bit of its economic data, this appears in the long run to be unimportant for the Commission apparently based its decision finally on the failure of the petition for rehearing to advance any factual basis or showing that "cable television operations in the Boise area will be foreclosed if (United Cable) is able to provide subscribers with only those signals already authorized," and its failure to demonstrate that the additional programming provided by a non-network channel would be so substantial as to determine the viability of cable television operations in the area. This determination by the Commission seems completely consistent with the standards establish by this Court with respect to the parallel situation in the Telecable case, supra.
 
 
 37
 We have carefully considered the other grounds brought forward by both United Cable and Treasure Valley Committee, including the contention that the opposition of the three local stations were so anti-competitive in nature as to warrant the Commission's granting the full rights sought by United, and we find them to be without merit. The orders of the FCC appealed from are AFFIRMED in both cases.
 
 
 
 *
 Honorable Elbert P. Tuttle, Senior Circuit Judge, United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 [1]
 The original applicant was a predecessor of United Cable, but it will be identified as United Cable for the purpose of this opinion
 
 
 [2]
 Other arguments raised were abandoned on appeal and are not discussed here
 
 
 [3]
 The Rules themselves provide as follows:
 The Commission, after consideration of the pleadings, may determine whether the public interest would be served by the grant, in whole or in part, or denial of the request, or may issue a ruling on the complaint or dispute. The Commission may specify other procedures, such as oral argument, evidentiary hearing, or further written submissions directed to particular aspects, as it deems appropriate. In the event that an evidentiary hearing is required, the Commission will determine, on the basis of the pleadings and such other procedures as it may specify, whether temporary relief should be afforded any party pending the hearing and the nature of any such temporary relief.
 
 
 [4]
 Non-duplication rules restrict the extent to which CATV systems may duplicate programs televised by local stations
 
 
 [5]
 Since the non-duplication rules are equally for the protection of the local television stations as are the distant signal carriage rules no reason occurs to us why the same kind of standing should not apply in both proceedings