**SOUTHWESTERN OPERATING COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

K-Six Television, Inc., Intervenor.
No. 19061.

United States Court of Appeals
District of Columbia Circuit.

Argued May 28, 1965.

Decided Sept. 27, 1965.

Mr. David H. Lloyd, Washington, D. C., with whom Mr. Andrew G. Haley, Washington, D. C., was on the brief, for appellant. Mr. William J. Potts, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. Howard Jay Braun, Counsel, F. C. C., with whom Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, F. C. C., were on the brief, for appellee. Messrs. Daniel R. Ohlbaum, Deputy Gen. Counsel, and Michael Finkelstein, Counsel, F. C. C., also entered appearances for appellee.

Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for intervenor. Mr. Thomas N. Frohock, Washington, D. C., also entered an appearance for intervenor.

Before BAZELON, Chief Judge, BAS-
TIAN, Senior Circuit Judge, and McGOW-
AN, Circuit Judge.

McGOWAN, Circuit Judge.

 This appeal from an order of
the Federal Communications Commission
does not present us with the question of
whether it was wrong for the Commis-
sion to authorize a second TV station in
Laredo, Texas, at all, but only of whether
it was wrong to do so without an eviden-
tiary hearing. This issue is a narrow
one, but its proper resolution is no less
difficult on that account. The statutory
standard to be applied is broadly phrased
and, especially in the context of a *Car-
roll* issue,[1] which is what is essentially
involved here, offers a tricky terrain for
the demarcation of the proper spheres of
court and Commission. Although we
have no doubt that Congress intended to
vest in the FCC a large discretion to
avoid time-consuming hearings in this
field whenever possible,[2] and we would
ordinarily defer to that purpose, special
features of the record before us cause us
to conclude that in this instance the de-
nial of a hearing fell outside the range of
legislative contemplation.

I

Appellant, Southwestern Operating
Company, was the licensee of the only
TV station in Laredo on February 17,
1964. On that day an application was
filed with the Commission by the inter-
venor, K-Six Television, Inc., for authori-
ty to operate on the other channel as-
signed to the community. Its applica-
tion represented that "Because the Lare-
do market cannot support two commercial
television stations at the present time, the
Applicant proposes large duplication of
programs from KZTV, Corpus Christi,
Texas, by off-the-air pickup and re-
broadcast"; and the Engineering State-
ment appended to the application stated
that "Program service for the proposed
station would be obtained from an off-
the-air pickup and microwave relay from
KZTV, Ch. 10, Corpus Christi, Texas,
which is 112.6 miles East of the Ch. 13
site." K-Six's answer to the form ques-
tion about estimated revenues for the
first year was "None."

In a timely filed petition to deny,
Southwestern pointed out that K-Six was
the licensee of Station KZTV in Corpus
Christi, and it charged that K-Six's pur-
pose was to strengthen its competitive

---

1. The name comes from our decision in
Carroll Broadcasting Co. v. FCC, 103 U.
S.App.D.C. 346, 258 F.2d 440 (1958). We
there held that an existing licensee has
standing to contest the grant of a com-
petitive license for the reason that "eco-
nomic injury to an existing station, while
not in and of itself a matter of moment,
becomes important when on the facts it
spells diminution or destruction of serv-
ice." We have made clear that it is the
public interest that is the focus of con-
cern, and not that of the protestant.

2. In 1960 Congress amended the Communi-
cations Act in respect of the procedure
provided for contesting applications for li-
censing authority. 74 Stat. 889, amending
47 U.S.C. § 309. It created the device
of a petition to deny, which must be filed
in advance of hearing and, indeed, made
it clear that no hearing need be held if
that petition failed to "contain specific
allegations of fact sufficient to show that
the petitioner is a party in interest and
that a grant of the application would be

prima facie inconsistent with [the pub-
lic interest, convenience and necessity]
* * *." 47 U.S.C. § 309(d) (1). If
"there are no substantial and material
questions of fact and * * * a grant
of the application would be consistent
with [the public interest] * * *" the
petition shall be denied and the grant
made without hearing. 47 U.S.C. § 309
(d) (2). If the Commission cannot make
such a finding, however, it shall proceed
under Section 309(e) which provides that,
if "a substantial and material question of
fact is presented or the Commission for
any reason is unable to make the [public
interest] finding," the application shall be
set for hearing on the issues raised. A
*Carroll* issue is clearly as subject to these
more rigorous pleading requirements as
any other, and, indeed, the temptation to
an existing licensee to postpone as long
as possible the advent of competition war-
rants special care by the Commission in
the scrutiny of requests for hearing in
*Carroll* circumstances.

position in Corpus Christi in respect of national and regional advertising by being able to offer such advertisers the Laredo market along with the Corpus Christi one. Southwestern asserted that this would, for obvious reasons, present a grave threat to its own national and regional advertising. It then made a number of factual representations with respect to the slender state of the Laredo economy, such as that its unemployment rate of 12.6 per cent was more than double that of the nation. It described the nature of the competition it already confronted, and analyzed its own financial position and operational costs. Southwestern expressed the fear that, if it were to sustain any significant loss of national and regional advertising, it almost inevitably would have to abandon some of its uncompensated local programming. It recognized that it had no right to be protected from competition, but it urged that the assertedly adverse impact upon local programming would degrade its service to the point of injuring the public interest. It asked that the matter be set down for hearing on a number of issues clustering around this central question.

K-Six filed an opposition in which it expanded and stressed its intention to originate local programs in Laredo, vigorously denying that it regarded Laredo as simply satellite territory. It challenged in varying degrees Southwestern's factual representations as to the state of Laredo's economy, Southwestern's existing competition, and Southwestern's financial position; and it rejected Southwestern's estimate of the effects upon it of the new competition. The documentary debate continued with the filing by Southwestern of a reply, including answering affidavits, to K-Six's opposition.

While this was going on, this court decided KGMO Radio-Television, Inc. v. FCC, 119 U.S.App.D.C. 1, 336 F.2d 920 (1964). We there held that, although the Commission could grant a license without a hearing as against a petition to deny that did not contain information adequate to pose substantial and material issues, the Commission should first make known to the objector the kind of information it deemed relevant to this end. On August 18, 1964, the Commission sent a letter to Southwestern, referring to our KGMO decision and enclosing a copy of the memorandum opinion and order which the Commission had formulated in response to it upon the remand. The Commission directed attention to the questions set out in its opinion which it thought must be answered in order to enable the Commission to determine whether an evidentiary hearing was necessary. Southwestern was then advised that it could, if it wished, amend its petition to deny in the light of the questions listed in the KGMO opinion. The Commission closed its letter by stating that, absent such amendment within a specified time period, it would act on the basis of the papers as originally filed. Southwestern replied to this letter by advising the Commission that it did not intend to submit additional information. Thereafter the Commission issued a memorandum opinion and order, with one Commissioner dissenting, finding that the petition to deny raised no substantial and material questions of fact necessitating an evidentiary hearing. Accordingly, appellant's petition was denied, and the authority sought by K-Six was granted.

## II

In paragraph 8 of its memorandum opinion and order in this case, the Commission addressed itself to the central issue urged upon us, namely, Southwestern's request that the application be set for hearing on the *Carroll* issue created by its claim that Laredo could not support a second TV station without injury to the public interest. The Commission disposed of the matter in these terms:

The facts alleged by the petitioner to support its request for a *Carroll* issue, however, were too generally stated, speculative, and not sufficiently related to the conclusions drawn by the petitioner to enable the

Commission to determine whether a *Carroll* issue would be warranted. Accordingly, by letter dated August 18, 1964, the Commission afforded the petitioner an opportunity to submit the type of information which we have stated that we consider necessary to support a *Carroll* issue. By letter dated October 19, 1964, however, the petitioner advised the Commission that it "will not submit additional information." Consequently, we find that, in the absence of such information, a *Carroll* issue is not warranted.

In view of the foregoing, we find that the petitioner has failed to raise substantial and material questions of fact. * * *

The Commission thus seems to say that, having examined the papers filed by Southwestern and having found them inadequate, it "accordingly" sent a letter inviting the submission of the kind of information which could repair the defect. Since Southwestern did not avail itself of this invitation, the Commission, "consequently" and "in view of the foregoing," found that it has not raised "substantial and material questions of fact." But this strikes us as something quite different from what the Commission's letter said. In that letter there is no statement that appellant's papers have been scrutinized and found wanting, and no warning that, unless the questions propounded to *KGMO* are also answered by appellant, a hearing will be denied and the license granted. The letter on its face is fully consistent with what it appears to have been in fact, namely, a form letter which went out to all persons with petitions to deny pending before the Commission and which, presumably, was designed to protect the Commission in every such case from the charge, sustained by this court in the *KGMO* case that it had not given adequate notice of the kind of information it required. A recipient of this letter could not thereafter claim that he lacked notice of the Commission's notions generally of what

is relevant information. But it is also true that a recipient's failure to amend his existing pleadings does not conclude him on the question of whether those pleadings already contained information of such a nature as to entitle him to an evidentiary hearing.

The Commission couched its decision briefly and pointedly in terms of appellant's failure to heed what the Commission now asserts was the clear warning it gave. As noted above, we discern no such warning, and it is unsettling, in a close case such as this, to find the Commission deciding the issue upon the assumption that a warning had been given and ignored. This appeal appears to have been presented to us by the Commission on a similar assumption, both in brief and oral argument, although, in the course of the latter, the force of the point became blunted considerably as it began to appear that appellant was only one of many recipients of an identical letter.

We deal with the matter of the letter at this length not because we regard it as conclusive but only because we wish to avoid the error of thinking it so. The question remains one of whether the papers filed with the Commission—not those that might have been filed—raised substantial and material issues of fact which should have been exposed to the give-and-take of an evidentiary hearing. We have read the documentary record upon which the Commission acted. It seems to us to have all the unsatisfactory aspects of a lawsuit tried in segments and by means of conflicting affidavits of principals and clashing assertions by counsel. There were, in our view, serious issues tendered by appellant as to the impact upon it, in the asserted state of the Laredo economy, of the impending competition from intervenor—a competition which, under the special circumstances of intervenor's Corpus Christi ties, might conceivably be quite different from that of an applicant proposing to operate without such an affiliation. These matters brought forward by

appellant were sharply and directly controverted by the intervenor; and the dispute impresses us as having attained, in the accumulation of documentary representations and affidavits, a dimension wherein the truth was becoming obscured, rather than revealed, by the mounting pile of papers. We believe that Congress would have regarded this dispute, in the special circumstances of this applicant and this record, as one appropriate for the hearing prescribed by it in Section 309(e), however much it may have been conscious, as we continue to be, of the dangers of delay inimical to the public interest peculiarly inherent in the *Carroll* situation.

The case is remanded to the Commission for proceedings not inconsistent herewith.

It is so ordered.

BAZELON, Chief Judge (dissenting):

To expedite the business of the Federal Communications Commission, Congress amended the Communications Act to dispense with a hearing requirement if the petition opposing a grant lacks "specific allegations of fact sufficient to show * * * that a grant of the application would be prima facie inconsistent with [the public interest, convenience and necessity]." [1] In the *Carroll* context, this means that the petition must allege specific facts sufficient to show public injury, *i. e.*, loss of service to the public as a consequence of economic loss to petitioner. In Missouri-Illinois Broadcasting Co., [2] the Commission listed the types of information necessary to require a *Carroll* hearing. The Commission sent petitioner and others a copy of its opinion in Missouri-Illinois Broadcasting Co., and of our opinion in the *KGMO* case, [3] which held that the more detailed pleadings could be required upon proper notice. The accompanying letter stated:

In the event that you do not submit the information in answer to the

questions set forth in the enclosed opinion [Missouri-Illinois Broadcasting Co.], the Commission will act on the application and the petition to deny as originally filed.

Petitioner answered that it did not intend to submit additional information. Thus the primary issue before us is whether the Commission erred in holding petitioner's pleadings to be "too generally stated, speculative, and not sufficiently related to the conclusions drawn by the petitioner."

Missouri-Illinois Broadcasting Co. requires that a petition "state, in detail, how a grant of [the] proposal would cause a net loss or degradation of program service to the area," and lists several specific questions related to public injury. For example: What public service programs would have to be discontinued? What public service programs would have to be shifted to other time segments? What is the cost of carrying these programs and what savings would be effected in dropping or shifting this programming?

The failure of a petitioner to answer any particular question or questions would not automatically foreclose a hearing. The test is whether "it is within the Commission's authority to require more information than appellant gave." [4] Petitioner's allegations of public harm consist of generalizations and conclusions, and do not provide the requisite specific information. Thus the Commission was justified in requiring more in this case.

The majority holds that a hearing is required because there are "substantial and material questions" of controverted fact. It finds "serious issues tendered by appellant as to the impact upon it, in the asserted state of the Laredo economy, of the impending competition from intervenor * * *." But a raging controversy on the question of economic injury to petitioner cannot be "material"

1. 74 Stat. 889 (1960), 47 U.S.C. § 309(d)(1) (1964).

2. 3 PIKE & FISCHER RADIO REG.2d 232 (1964).

3. KGMO Radio-Television, Inc. v. Federal Communications Comm'n, 119 U.S.App.D.C. 1, 336 F.2d 920 (1964).

4. *Id.* at 922.

when the petitioner fails to allege sufficiently specific facts to show public harm.

The majority's decision thus undercuts the rationale for the statutory pleading requirements. There is sound reason to require specific allegations of public injury on the *Carroll* issue. That issue may involve a mass of conflicting economic data and hearings are therefore likely to be lengthy and hotly contested. Thus the public may be unduly delayed in obtaining the benefits of the new facility. If the requirement of specificity in pleading public injury appears unreasonable, it is the *Carroll* doctrine, not the requirement, which needs reconsideration.[5]

5. See criticism of *Carroll* doctrine in Givens, *Refusal of Radio and Television Licenses on Economic Grounds*, 46 VA. L.REV. 1391 (1960).