Stanley MARSH III, Tom F. Marsh, Michael Marsh, John S. Tyler and Estelle Marsh (limited partner), a partnership d/b/a Marsh Media, Ltd., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION and Stauffer Publications, Inc., Intervenor.

No. 23224.

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 1970.

Decided Aug. 7, 1970.

Mr. Michael Finkelstein, Washington, D.C., for appellant.

Mr. Stuart F. Feldstein, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. L. Adrian Roberts, for intervenor.

Before WRIGHT and TAMM, Circuit Judges, and MATTHEWS,* Senior Judge, U.S. District Court for the District of Columbia.

TAMM, Circuit Judge:

This is an appeal from an order of the Federal Communications Commission authorizing licensee Stauffer Publications, Inc. (hereafter "Stauffer") to increase the antenna height of station KGNC-TV located in Amarillo, Texas. The appeal is brought by Marsh Media, Ltd. (hereafter "Marsh"), the operator of a competing television station who had petitioned the Commission to deny the requested authorization; Marsh wanted to create an "antenna farm" in which all Amarillo broadcasters would participate and thought it unlikely that such a farm would be possible if Stauffer were to increase the height of its existing tower. The argument on appeal is that the Commission erred in finding, without a hearing, that the grant of the Stauffer application would serve the public interest; Marsh contends that a greater number of listeners would be served if Amarillo's broadcasters operated from an antenna farm and that this

* Sitting by designation pursuant to Title 28, U.S.Code, Section 202(a).

factor should have commanded a different conclusion by the Commission.

Our views are set out at some length below but our conclusion lends itself to concise summation. We think the Commission acted reasonably in a matter dependent largely on agency expertise and that its decision is supported by substantial evidence in the record; accordingly we affirm.

## I

### A. THE MEMORANDUM OPINION AND ORDER

We begin with an examination of the order under attack. In re Stauffer Publications, 18 F.C.C.2d 183 (1969). The Commission had before it two proposals: (1) Stauffer's application to increase its antenna height and (2) Marsh's petition to deny that application.

Stauffer proposed an increase in the height of its existing antenna from 780 feet to 1,420 feet above average terrain. The Commission found that Stauffer was "legally, technically, financially, and otherwise qualified to construct and operate as proposed and that a grant of the application would serve the public interest, convenience and necessity." In re Stauffer Publications, 18 F.C.C.2d 183, 185 (1969). The elevation for which Stauffer applied had the approval of the Federal Aviation Administration as required by Commission rule. (47 C.F.R. § 17.7 (1970).) The Commission granted the application.

Several months before Stauffer first made application, Marsh too had filed a request for authority to increase the height of its broadcasting facility. The plan had been to relocate its existing transmitter at a site where it would operate from a tower 2,000 feet above average terrain. Because of opposition from the Federal Aviation Administration, however, based on a finding that a 2,000 foot tower would impede air traffic, the application was amended to reduce the proposed tower height from 2,000 feet to 1,700 feet; the Commission granted the application as amended and Marsh built a tower for an antenna of 1,700 feet.

Though successful in gaining for itself a tower higher than that sought by Stauffer, Marsh nevertheless sought to block its application by filing a petition to deny. It seems that Marsh had not abandoned hope of a 2,000 foot tower and reasoned that the means to this end was the establishment of an antenna farm on the site of the new 1,700 foot tower; Marsh attempted to initiate such a step with the Commission. Marsh feared that if Stauffer were to increase the height of its existing antenna, which was not in the area of the proposed antenna farm, then the Commission would not be inclined to act favorably on the antenna farm idea, hence the filing of the petition to deny.

### B. ANTENNA FARMS

There is nothing very technical or difficult about the concept of antenna farms: they are simply aggregations of antennas of more than one broadcaster into a relatively limited area. The Commission first contemplated the possibility of setting up antenna farms in 1965. Establishment and Use of Antenna Farm Areas, 8 F.C.C.2d 559 (1967). An antenna farm area is defined as "a geographical location, with established boundaries, designated by the Federal Communications Commission, in which antenna towers with a common impact on aviation may be grouped." (47 C.F. R. § 17.2(b) (1970).)

The Commission gave the following rationale for creating antenna farms:

The impact upon aviation of a group of tall towers is obviously less and more easily accommodated by appropriate adjustments in aeronautical procedures than is the impact of several tall towers scattered at random. These factors caused the Commission to consider the advisability of the establishment of antenna farm areas where high antennas could be grouped. We were concerned not only with aeronautical safety but also with making it simpler for the aviation in-

dustry to adjust their flight requirements to accommodate greater antenna heights than might be possible if antennas were not grouped. Establishment and Use of Antenna Farm Areas, 8 F.C.C.2d 559, 561 (1967). The combination of maximum height of antennas with minimum interference to air travel was the basic feature of antenna farms as they were contemplated by the Commission, and it was this combination which constituted their lure for Marsh.

The Commission's rules provide that an antenna farm area may be established after a rule making proceeding commenced by the Commission acting on its own or at the request of the Federal Aviation Administration; the Commission may also act in response to the petition of "any interested person." (47 C. F.R. § 17.8(a) (1970).) When confronted with a petition for rule making filed by an interested person, the Commission will act only if the petition "disclose[s] sufficient reasons to justify institution of a rule making proceeding." (47 C.F. R. § 17.8(a) (1970).)

As previously noted, Marsh had given in to the demands of the Federal Aviation Administration that its new tower be only 1,700 feet above ground; but it nevertheless built a structure on its new site which could accommodate an antenna 300 feet higher. Marsh came to believe that the Federal Aviation Administration would approve such an increase if the site of its transmitter were declared to be an antenna farm. Pursuant to this end, Marsh filed a petition for rule making with the Commission, under the above-described procedures, suggesting the creation of an antenna farm on the site of its new tower. This petition was filed after the Commission's approval of Marsh's application for a 1,700 foot tower and after Stauffer had applied for an antenna height increase, but before the Commission ruled on Stauffer's application. This chronology is significant for the light that it sheds on the Commission's disposition of Marsh's petition to deny.

## C. THE PETITION TO DENY

Marsh filed the petition to deny because it feared the effect that a grant of this authority might have on its proposed antenna farm. Viewed from a different angle, the concern was that Marsh's desire for a 2,000 foot tower, thought to be contingent on the creation of an antenna farm, would be thwarted if Stauffer were allowed to increase the height of an antenna which was outside the proposed farm's confines. Marsh reasoned that the Commission would be inclined to view these two proposals as alternatives, only one of which it would accept. Marsh suggested as much in its petition:

[O]n December 2, 1968 Stauffer filed its comments in *opposition* to the Marsh antenna farm proposal. The Stauffer opposition, at best, jeopardized a grant of the Marsh antenna farm proposal and, at worse, could result in its denial. Furthermore, in opposing the Marsh antenna farm proposal on the ground that [Stauffer] plans to build its own tall tower outside the proposed antenna farm area Stauffer is, in effect, claiming that the Marsh antenna farm proposal and Stauffer's application * * * are mutually exclusive.

(J.A. 6.)

Marsh cast its objections to the Stauffer proposal in terms of the public interest in eliminating substantial "white areas" in the Amarillo vicinity. A "white area" in communications parlance is a geographical location which receives no television signal. "If the grant of the [Stauffer] application results in the freezing of the [Marsh] tower at its presently authorized height," the petition argued, then Marsh would be unable to broadcast its signal to "a 1,607 square mile area that is presently without any television service." (J.A. 7.)

It is easy to lose sight of the distinctions between Stauffer's application, Marsh's petition to deny it, and Marsh's independent petition for rule making.

That tendency is strengthened by Marsh's argument that the three, in fact, are one: the public interest in receiving television service in substantial "white areas" in parts of Texas and New Mexico. The Commission is less unitarian and is more inclined to segregate each petition according to the factors it deems controlling in that instance. Our approach falls somewhere in between, but it is guided by our awareness that Marsh's petition for rule making is not the subject of this appeal even though the antenna farm issue affects all other questions raised in these proceedings.

## II

### A. *THE HEARING ISSUE*

Marsh contends that the Commission erred in failing to schedule an evidentiary hearing before dismissing its petition to deny and granting Stauffer the authorization it sought. Specifically, the station argues that the Commission violated section 309 of the Federal Communications Act which requires that a hearing be held if a petition to deny presents either "a substantial and material question of fact" or "if the Commission for any reason is unable to find that grant of the application would be consistent with [the public interest, convenience, and necessity]." (47 U.S.C. §§ 309(d) (2) and (e) (1964).) Marsh argues that the Commission should have considered an alternative site for Stauffer's antenna, that site to be an antenna farm, because a wider "white area" would receive television service; thus the Commission should have received evidence on the question whether Stauffer would better serve the public interest by locating its antenna on an antenna farm. It argues that considerable weight should have been given to the fact that an antenna farm including antennas of both Stauffer and Marsh would provide service to an area of over 3,000 square miles which then received no television service.

The Commission's position is that no hearing was required because no substantial and material questions of fact were presented by Marsh's protest. That the parties urged different approaches to the problem of providing television service to the Amarillo area did not imply necessarily that these differences were factual in nature. Because Stauffer had met all Commission criteria for serving the public interest and because the Federal Aviation Administration had approved an increase in the existing tower, both points uncontested by Marsh, the Commission contends that no comparison of sites was required before it made a finding that a grant of the authorization was in the public interest. The Commission points out that Stauffer's proposed change would result in better service to the Amarillo area and would increase the size of the area which would receive Stauffer's signal. Marsh never contested any of these facts and the Commission never contested the fact that if Stauffer did locate on the antenna farm, an even wider area would receive television service. Thus Marsh's petition raised no disputed question of fact, and perforce no "substantial" or "material" question of fact, but merely challenged the weight that should have been given to these facts. Furthermore, Marsh gave no reason why the Commission was unable to make a public interest finding on the basis of the agreed facts without first holding a hearing.

The factors involved in deciding whether to provide one type of service to Amarillo or another were quite clear to the Commission and to all interested parties. Only the ultimate choice was to be determined. This was not the kind of situation, we feel, which required a hearing: the record is not marred with relevant questions of fact left unresolved or undiscovered.

Marsh relies on Wometco Enterprises, Inc. v. FCC, 114 U.S.App.D.C. 261, 314 F.2d 266 (1963), to parry the thrust of these arguments. There the Commission granted without a hearing applications for permission to relocate a transmitter; it rejected a competing broadcaster's petition for a hearing. The

protestant argued that substantial questions of fact were thus left unanswered, for example, whether the needs of the new service area would be met by the applicants and "whether the proposed site moves would result in a fair, efficient and equitable distribution of television service and would otherwise be consistent with the public interest, convenience and necessity." Wometco Enterprises, Inc. v. FCC, 114 U.S.App.D.C. 261, 262, 314 F.2d 266, 267 (1963). This court reversed the Commission but gave only a cryptic, one sentence rationale for its decision: "In our opinion, the issues presented by Wometco were so substantial that the Commission erred in disposing of them in a summary manner." (*Id.*)

■■ We feel that *Wometco* cannot carry the weight Marsh assigns to it. There is a difference between "substantial issues" which require a hearing to elucidate the controlling factors, such as in *Wometco*, and issues such as involved here. The latter may be just as important as the former, but unless they depend on unresolved factual circumstances, no hearing is required to resolve them. Only where the public interest cannot be determined without a resolution of disputed facts has Congress dictated that the Commission must conduct a hearing. That is the clear meaning of section 309 of the Act. (47 U.S.C. §§ 309(d) (2) and (e) (1964).) Southwestern Operating Co. v. FCC, 122 U.S. App.D.C. 137, 351 F.2d 834 (1965). Without hesitation we hold that the Commission was not required to hold a hearing before deciding the questions raised by Marsh's petition; considering the facts that the Commission had before it, "nothing suggests to us that a further hearing would produce additional facts that might change the result." Capitol Broadcasting Co. v. FCC, 116 U. S.App.D.C. 370, 373, 324 F.2d 402, 405 (1963).

## B. *TIMELINESS*

The parties have devoted substantial attention to the question of whether Marsh's petition to deny was timely filed pursuant to the Commission's rules. (47 C.F.R. § 1.580(i) (1970).) In its order the Commission held, correctly we think, that the petition was not filed within the prescribed period and that it should properly be dismissed on that ground. Nevertheless the Commission went on to consider the issues raised in the petition under a provision of its rules permitting informal objections to an application. (47 C.F.R. § 1.587 (1970).) In view of the importance of the questions raised by the petition, this was a commendable procedure for the Commission to follow; we likewise have disposed of this appeal as if the petition had been timely filed.

### III

## *THE MERITS OF THE COMMISSION'S ORDER*

■ Even though no hearing was required, the question remains whether the Commission acted arbitrarily or capriciously in granting Stauffer's petition and in denying Marsh's. We approach a determination of that issue cognizant of the limits of our authority to review a Commission order. Deference is owed to the Commission's expertise and to its primary responsibility for the administration of the Communications Act; if there is substantial support for the Commission's decision in the record, then our job is to affirm. WEBR, Inc. v. FCC, 136 U.S.App.D.C. 316, 420 F.2d 158 (1969).

Throughout the proceedings before the Commission, as we have noted, there never was any argument that Stauffer's application failed to comply with the Commission's rules, or that it lacked Federal Aviation Administration approval, nor was it denied that Stauffer would be able to provide additional service to areas previously "white." Thus we need not consider the merits of the Commission's approval except insofar as it relates to Marsh's antenna farm. That relationship, Marsh urges, was dual: (1) if Stauffer were to locate its antenna on the proposed site of the an-

tenna farm, it would be able to serve a larger segment of the public than from its existing site and (2) if Stauffer were permitted to go ahead with its plan, then Marsh's proposal would fail and the substantial "white area" it hoped to serve by increasing its antenna height to 2,000 feet would be lost.

On each of these issues the Commission ruled adversely to Marsh. As required by section 309 of the Act, there was included in its order a "concise statement * * * dispos[ing] of all substantial issues raised by the petition." (47 U.S.C. § 309(d) (2) (1964).) It is to this that our attention now turns. While conceding that Stauffer would serve a greater "white area" if broadcasting from the antenna farm, the Commission refused to deny Stauffer's pending noncontingent application in favor of Marsh's proposal which was contingent on several unknowns. The Commission listed these contingencies:

> [that] the Commission designates the area around Marsh's tower as an antenna farm, a matter that is contested by both of the other commercial television stations in Amarillo; [that] the FAA approves a 2,000 foot tower in the designated area, which it has previously refused to do; and [that] Marsh files and the Commission grants a construction permit specifying a 2,000 foot tower, a prejudgment we cannot now make.

In re Stauffer Publications, 18 F.C.C.2d 183, 184 (1969).

We must agree with Marsh, at least as to the first and third of these contingencies, that it is an odd agency which hesitates to act because of contingencies which it has the power to control. If the Commission had wished, it could have itself begun proceedings to designate the area as an antenna farm and be fairly sure that Marsh would apply immediately for the authority to construct a 2,000 foot tower on the farm, an authority the Commission would be in a position, if so inclined, to grant. It strikes us that the Commission cannot

put too much weight on this kind of "contingency."

Nevertheless, it is true that the approval of the Federal Aviation Administration, which was not directly within the power of the Commission to effect, was far from certain and was, therefore, contingent; without it no antenna farm was feasible and without the farm Stauffer, of course, could not service the area projected by Marsh. Although we do not endorse for all purposes the Commission's proposition that a "bird in the hand" is of more value than "two in the bush," we cannot say that the Commission acted arbitrarily in finding that the public interest required a grant of Stauffer's application.

We must caution that our conclusion is not a blanket approval of a proposition which underlies the Commission's order and appears more distinctly in its brief, namely, that the Commission is never required to consider an alternate site when determining the public interest factors in a pending application. Surely this court's decision in Wometco Enterprises, Inc. v. FCC, 114 U.S.App. D.C. 261, 314 F.2d 266 (1963), previously discussed, stands counter to that position and, we think, rightly so. The Commission relies on its own case, WKYR, Inc., 1 P&F Radio Reg.2d 314 (1963), as authority for the thesis that unless an antenna site is otherwise deficient, the Commission need not compare it to an alternative site which has not been suggested by the applicant himself. The Commission there reasoned that to require comparison of hypothetical alternatives "would impose upon [its] processes a burden of impossible magnitude." (*Id.* 317.) This was indulging in some exaggeration, since there was only one alternative site proposed and it was supported by engineering data.

This court was called upon to review the Commission's decision in that case, and what was said there bears repetition. The action was affirmed but a more flexible view of the question was taken: "The Commission is not bound

in every case, *though it may be bound in some*, to consider evidence with respect to other possible locations in determining whether, in the public interest, to grant an application for a license, modification or renewal." Allegany County Broadcasting Corporation v. FCC, 121 U.S.App.D.C. 166, 168, 348 F.2d 778, 780 (1965) (emphasis added). We do not reach the question of whether this is the kind of case in which the Commission is bound to consider evidence with respect to alternate sites because we think there is evidence that the Commission did consider Marsh's proposed site. We cannot say that in weighing the factors in favor of each location the Commission acted arbitrarily or capriciously in concluding that the public interest would be better served by a grant of Stauffer's noncontingent application to extend the antenna on its existing site.

Marsh's second motivation for opposing Stauffer's application, as we have noted, was the fear that its approval would preclude a favorable decision on the antenna farm proposal. Since it would then be limited to a 1,700 foot tower, Marsh argued that the result would be a loss of potential service to a vast "white area" of 1,730 square miles of northwest Texas and northeast New Mexico. The major premise of this argument is faulty since the Commission's rules "permit the establishment of antenna farms irrespective of existing authorizations." In re Stauffer Publications, 18 F.C.C.2d 183, 184 (1969). Thus an increase in Stauffer's antenna would not preclude the establishment of an antenna farm on the Marsh site, either in response to its then-pending petition or at some time in the future. Service to the "white area", in other words, did not hang as precariously in the balance as Marsh would have us believe. According to the Commission's rules, even if an antenna farm had been designated for the Amarillo area, Stauffer would not have been prevented from extending its existing antenna, as long as it could get a Federal Aviation Administration determination (as was done here) that the proposed structure would

not constitute a menace to air navigation. (47 C.F.R. § 17.10(b) and § 17.17 (1970).)

Since the approval of Stauffer's application did not require a denial of Marsh's proposal and a consequential loss of service to a "white area," we think the Commission acted reasonably in finding that the prejudice alleged by Marsh was "too remote" to override the improved service that a grant of Stauffer's application would permit. In re Stauffer Publications, 18 F.C.C.2d 183, 184 (1969).

IV

*MARSH'S PETITION FOR RULE MAKING*

Shortly after approving Stauffer's application, the Commission denied Marsh's petition for a rule making proceeding to establish an antenna farm. Establishment of Antenna Farm Area at Amarillo, Tex., 20 F.C.C.2d 119 (1969). The propriety of that decision is not the subject of this appeal; but the Commission's action there is inseparably related to the order on appeal. Despite this relationship, the Commission has a tendency in its arguments to this court to discuss the Stauffer application and the antenna farm proposal as if entirely different agencies were involved in making each decision. This attitude has a way of causing discomfort to an unsuccessful applicant and that is a sensation not altogether unfamiliar to us. Thus, in order to dispel any doubts about the Commission's actions in the Stauffer proceeding, some ventilation of the later proceeding seems well advised.

The first order of business is to isolate the standard applied when the Commission is faced with this type of petition for rule making. The rules provide that a proceeding will be instituted after receipt of a petition "disclosing sufficient reasons to justify institution of a rule making proceeding." (47 C.F.R. § 17.8(a) (1970).) How the Commission differentiates between "sufficient reasons" and insufficient reasons we are not told, but we may infer that "reasons" are "sufficient" which relate to

the purposes for which an antenna farm is created. One such purpose is the grouping of antenna structures "with a common impact on aviation." (47 C.F. R. § 17.2(b) (1970).) A second is reflected in the following passage:

> Our purpose in instituting this proceeding was to establish procedures which would permit the construction of taller antenna towers without the need for protracted hearings on individual applications for such towers to determine their effect on public safety in air transportation.

Establishment and Use of Antenna Farm Areas, 8 F.C.C.2d 559 (1967).

It appears from these statements that the Commission will be inclined toward the creation of an antenna farm when the need of the public for taller antenna towers and better television signals can be harmonized with the requirements of public safety in air transportation. In the instant proceeding the desire of one broadcaster to expand his broadcasting equipment for the sake of better service to a wider area was balanced against opposition from the other stations in the area and from an organization representing the public interest in air safety. Add to this the relatively sparse population of the projected area increase, the uncertainty that Federal Aviation Administration approval would be won, and, finally, the tremendous costs involved if the other Amarillo stations were to move to the antenna site. These were the terms of the equation with which the Commission was dealing; there is no reason to believe that its decision was motivated by anything other than a conviction that the factors militating against the antenna farm were greater than those in favor. After listing the forces opposed to the farm, the Commission concluded:

> In the face of such opposition, the Commission would institute an antenna farm proceeding only if compelling reasons for so doing existed. We do not believe that any such compelling reasons exist in the Amarillo situation. On the contrary, since the gain in population coverage would not be large, even with a 2,000-foot tower, and, since the indications are that [Marsh] would remain the only Amarillo television station in the antenna farm if it were established, we do not believe that establishment of the proposed antenna farm would serve the public interest, convenience, and necessity.

Establishment of Antenna Farm Area at Amarillo, Tex., 20 F.C.C.2d 119, 121 (1969). We see nothing arbitrary or capricious in this reasoning and detect no prejudice to Marsh.

Marsh accuses the Commission of "bootstrapping":

> [B]y the time the Commission considered the antenna farm petition, it had become more concerned with justifying the grant of the [Stauffer] application than with the public interest questions presented by the petition. * * * Since the denial of the antenna farm petition was premised upon the prior grant of the [Stauffer] application, the denial of the antenna farm petition obviously cannot justify that prior grant.

(Appellant's Revised Brief, at 15.)

Obviously the same administrative body issued both orders and an accusation of arbitrariness would be close to the mark if that body justified what it decided in one instance by what it decided in the other and vice versa. In our view, however, the Commission did not do that here. We must reiterate that the Commission was not compelled, although Marsh argues to the contrary, to deny the antenna farm proposal because it had granted Stauffer's application. It could have approved each if it had found them both to be in the public interest. Thus it is not true that the denial of Marsh's petition "was premised upon the prior grant" of Stauffer's application.

For these and all the reasons we have discussed, we have concluded that the Commission's order granting Stauffer's application and denying Marsh's petition to deny must be

Affirmed.