**WESTMINSTER BROADCASTING CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**KPAL Broadcasting Corp. et al.,**
**and**
**R. R. Moore Corporation, Intervenors.**
**No. 24774.**

United States Court of Appeals, District of Columbia Circuit.
Argued Dec. 6, 1971.
Decided Jan. 17, 1972.

---

Mr. Marvin J. Diamond, Washington, D. C., for appellant.

Mr. Richard R. Zaragoza, Counsel, Federal Communications Commission, with whom Messrs. Richard E. Wiley, Gen. Counsel at the time the brief was filed, John H. Conlin, Associate Gen. Counsel at the time the brief was filed, and Miss Katrina Renouf, Counsel, Federal Communications Commission, were on the brief, for appellee.

Messrs. Paul Dobin, and Joel H. Levy, Washington, D. C., were on the brief for intervenors.

Before BAZELON, Chief Judge and McGOWAN, Circuit Judge, and CHRISTENSEN,* United States Senior District Judge for the District of Utah.

PER CURIAM:

Appellant Westminster Broadcasting Corporation seeks review of a Federal Communications Commission order denying, without hearing, its petition to deny the application of a competitor to transfer its license to a third party.

Westminster is the licensee of Station KCMJ, one of three licensed AM radio stations in the Palm Springs, California area. KCMJ has been broadcasting since 1946, and has been operated by appellant since 1961. Station KPAL, one of the other two stations, has been operating since 1956. The individual princi-

---

* Sitting by designation pursuant to Title 28, U.S.Code, Section 294(d) (1970).

pally involved in the ownership and operation of KPAL, Mr. Harry Maizlish, died on March 24, 1969. On April 25, 1969, the Commission granted authorizations to the administrators of Mr. Maizlish's estate to permit KPAL to remain silent for ninety days, and these were continued through May 10, 1971. On September 10, 1969, the administrators petitioned the Commission for authority to transfer the license of KPAL to R. R. Moore Corporation, the intervenor in this case. Westminster petitioned to deny this authority on November 13, 1969, on the ground, *inter alia,* that the market in Palm Springs lacked sufficient revenues to support three radio stations, and that under this court's decision in Carroll Broadcasting Co. v. FCC, 103 U.S.App.D.C. 346, 258 F.2d 440 (1958), the public interest requires a denial of the transfer. On October 5, 1970, the Commission, without hearing, issued a memorandum opinion and order granting KPAL's petition to transfer its license and denying Westminster's petition to deny.[1]

■ The Federal Communications Act [2] requires the Commission to grant a hearing to any party in interest opposing the grant of an application who presents a "substantial and material question of fact" with respect to whether the application would be inconsistent with the "public interest, convenience, and necessity." This court held in *Carroll* that the Commission may not refuse to consider a substantial showing by an opponent of a new license that the market revenues of an area are so limited as to make the appearance of a new station likely to result in a net deterioration of service. While not disagreeing with the Commission that the Act does not protect existing licensees from competition —even competition from a new licensee that may drive the existing licensee out of business—we held that

" . . . if the situation in a given area is such that available revenue will not support good service in more than one station, the public interest may well be in the licensing of one rather than two stations. To license two stations where there is revenue for only one may result in no good service at all. So economic injury to an existing station, while not in and of itself a matter of moment, becomes important when on the facts it spells diminution or destruction of service." 103 U.S.App.D.C. at 349, 258 F.2d at 443.

However, the mere allegation by an existing licensee of insufficient market revenues and predicted diminution of service is not in itself sufficient to present a substantial *Carroll* question meriting an evidentiary hearing under the Act. We have also recognized that

" . . . the temptation to an existing licensee to postpone as long as possible the advent of competition warrants special care by the Commission in the scrutiny of requests for hearing in *Carroll* circumstances." Southwestern Operating Company v. FCC, 122 U.S.App.D.C. 137, 138, n. 2, 351 F.2d 834, 835 n. 2 (1965) ;

and that

" . . . the Commission is entitled to insist upon more than conclusional allegations easily made and which, if accepted, entail unjustified delay and consumption of the Commission's time and energy." Folkways Broadcasting Co. v. FCC, 126 U.S.App.D.C. 123, 127, 375 F.2d 299, 303 (1967).

The question therefore, in this case is whether appellant's petition to the Commission presented a sufficiently substantial claim to entitle appellant to an evidentiary hearing.

■ In some cases a difficult balance must be struck between the need to require more than conclusory allegations,

---

1. On December 16, 1970, in a second opinion and order, the Commission denied a petition to stay its order pending Westminster's appeal to this court; and a subsequent motion in this court by appellant for a stay pending appeal was denied January 17, 1971.

2. 47 U.S.C. § 309(d) and (e) (1970).

on the one hand, and the danger of frustrating meritorious claims by the imposition of formalistic and often unrealistic pleading requirements, on the other. *See Folkways Broadcasting, supra.* Striking that balance is particularly difficult with respect to *Carroll* claims, where an attempt to show that an additional station will result in a net deterioration of service necessarily involves predictive and hypothetical judgments. Recognizing these difficulties, and at the same time recognizing that proper deference must be given to the opinion of the Commission in light of its special familiarity with the problems involved, we affirm the Commission's determination that appellant failed to present sufficiently substantial questions of fact to merit a *Carroll* hearing.

In its petition before the Commission, appellant alleged that (1) the three AM stations and one FM station in Palm Springs[3] have been losing substantial amounts of money for a number of years,[4] (2) the two recently established UHF television stations in the area have also been losing money, (3) Palm Springs is served by two newspapers, one magazine, three other nearby radio stations, and one CATV system that compete for advertising revenue, (4) due to its losses, KCMJ has experienced a rapid turnover in its personnel, and (5) with the additional revenues it would presumably receive absent competition from KPAL, KCMJ could improve its public service broadcasting.

 No attempt was made to allege, even approximately, the total advertising revenues available in the Palm Springs market, or how such revenues are insufficient to meet the expenses of the three AM radio stations. We cannot agree with appellant that the losses suffered by the three stations in the past constitute "proof that the market did not have the capacity to support those stations." Many reasons may explain even continued business losses besides the inadequacy of market capacity. The first that comes to mind, of course, is a lack of sufficient business acumen or entertainment appeal to compete successfully with other advertisers in the market. Without suggesting this to be the case, and without attempting to prescribe specifically the allegations necessary to present a substantial question of fact, we agree with the Commission that here some showing of a connection between actual market capacity and a predicted net diminution of service is necessary.

In this case, however, appellant did not even allege that a reactivation of KPAL would necessitate *any* curtailment of its public service programming, or, indeed, any of its broadcasting, although net detioration of service is an essential element of a *Carroll* showing. On the contrary, appellant has conceded that, despite its losses, even when KPAL was on the air appellant continued to improve its public service programming. Appellant relies heavily on *Folkways Broadcasting, supra,* where this court held that a petitioner need not allege specifically which programs within a range of programs would have to be curtailed, since those are decisions "where some latitude should be left to management."[5] But that decision did not in any way abandon the requirement that there be some showing of a necessary diminution of service.[6]

---

3. Stations KCMJ, KPAL, KDES (not a party to this proceeding) and KGEC (an affiliate of KDES).

4. The petition shows at most that KPAL has been losing money since 1962 and that KCMJ and KDES have been losing money since 1968.

5. 126 U.S.App.D.C. at 128–129, 375 F.2d at 304.

6. The fact that appellant has not alleged any curtailment of existing service that would be necessitated by KPAL's reactivation may be explained by the peculiar circumstance in this case that the appellant is not challenging an application for a new license, but is opposing the reactivation of a station with whom it had competed until shortly before its petition to deny was filed. In other words,

The most that appellant alleged was that, with the additional revenues it would be likely to receive absent the reactivation of KPAL, it would be able to improve its public service programming.[7] It argues here that to require an allegation of diminution of service in the face of competition rather than the improvement of service in the absence of competition would exalt form over substance, presumably on the theory that both are different sides of the same coin. That they are not exposes the fallacy of appellant's position. Even an entrenched monoply in the most affluent market might plausibly allege that barring potential competition will increase its revenues and permit more public service programming. The question under Carroll is not whether the public interest may possibly benefit without new competition but whether it will necessarily suffer because of it.

■ Since appellant's allegations were largely conclusory and not supported by the factual showings necessary to present a genuine Carroll issue, the Commission did not err in denying its motion for a hearing on the question. In its brief before this court, the Commission relied heavily on the additional argument that, even if petitioner had raised sufficient factual questions for a Carroll hearing, its petition must be denied on the ground that Carroll does not apply to transfer proceedings, but only to challenges of new license applications, citing Valley Telecasting Co., Inc. v. FCC, 119 U.S.App.D.C. 169, 338 F.2d 278 (1964). It argues that when a market is insufficient to support adequately the existing stations in the area, it is arbitrary to delete one of them simply

because unfortunate circumstances necessitate its sale to a third party. While Valley Telecasting, supra, would seem to give some support to this position, the Commission did not rely on this argument in either of its decisions under review. But, as the Supreme Court said in SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), it is a "simple but fundamental rule of administrative law . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Thus, we do not reach that question, but affirm on the basis of the Commission's determination that appellant failed to present substantial factual questions warranting an evidentiary hearing.

It is so ordered.

---

having achieved its present level of programming in the face of competition from KDES and KPAL, arguably it should not have to allege a reduction in that level if KPAL competition is reintroduced. These circumstances, however, rather than excusing part of appellant's burden under Carroll, may simply demonstrate the impropriety of entertaining a Carroll attack at all in a transfer proceeding. See p. 1360, infra.

7. It may be noted, however, that appellant made no effort to show that, in the seven months between KPAL's silencing and Westminster's petition to deny, Westminster's revenues did in fact increase or that any such additional revenues went towards improving its service.