Arvella **HARRIS** et al., Plaintiffs,

v.

Edward **LEVI,** Attorney General, et al., Defendants.

**Civ. A. No. 75–1159.**

United States District Court, District of Columbia.

June 4, 1976.

Daniel D. Stier, Columbus, Ga., David F. Walbert, John L. Cromartie, Jr., Atlanta, Ga., Ann Steinberg, Peter H. Rodgers, Washington, D. C., for plaintiffs.

Carl W. Gabel, Frederick J. McGrath, Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court on cross-motions for summary judgment on count one of the complaint. Count one alleges that the Attorney General of the United States failed to follow applicable regulations in deciding to withdraw an objection to the implementation of Act No. 1046 of the 1970 Session of the Georgia General Assembly, interposed pursuant to section five of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970). In a previous order, the court denied a motion to dismiss count one, reserved judgment on the motion insofar as it pertained to counts three, four and five, and dismissed count two. *See* Order of January 5, 1976. 416 F.Supp. 208. In refusing to dismiss count one, the court held that if plaintiffs could prove that the Attorney General based his decision to withdraw the objection to Act No. 1046 on information previously available to the State of Georgia, they would have stated a cause of action upon which relief could be granted. Memorandum accompanying Order of January 5, 1976; *see* 28 C.F.R. §§ 51.23–51.25 (1974).[1] The court finds that the Attorney General did consider information not previously available to Georgia and will grant defendants' motion for summary judgment on count one. The court further finds that counts three, four and five challenge actions not amenable to judicial review under the Administrative Procedure Act (APA), § 10, 5 U.S.C. §§ 701–706 (1970), and must be dismissed. Since the court dismissed count two in the Order of January 5, 1976, no grounds re-

---

1. The Attorney General decided to withdraw objection to Act No. 1046 on October 25, 1974. Consequently, citations are to the 1974 Code of Federal Regulations.

main upon which plaintiffs can be granted relief.

Pursuant to Department of Justice regulations, the Attorney General stated in writing his reasons for withdrawing objection to Act No. 1046. *See* 28 C.F.R. § 51.24 (1974). The parties state, and the court agrees, that, in determining whether the Attorney General relied on previously unavailable information, the court can consider only those reasons stated in the record. *See F.P.C. v. Texaco,* 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974); *Texas Gas Transmission Corp. v. Shell Oil Co.,* 363 U.S. 263, 270, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960); *Westminster Broadcasting Corp. v. FCC,* 148 U.S.App.D.C. 332, 459 F.2d 1356, 1360 (1972).

In a letter of October 25, 1974, the Justice Department provided the following justification for withdrawing objection to Act No. 1046:

> We have made a re-evaluation of the change from district to at-large election of commissioners combined with majority vote and designated post requirements in light of the additional information presented by you and supported by black as well as white citizens of Meriwether County. This information shows that even though, as noted in our July 31 letter of objection, Districts 1 and 2 have black population majorities, the black population generally is dispersed throughout the County, and that the northern two-thirds of the County, which contains these two black majority districts, is more sparsely populated than the southern one-third, thus making the delineation of district boundaries to comply with the one-man/one-vote requirement unfeasible. The information presented by you additionally shows that there exists no firm rule of racial block voting in Meriwether County, and that the majority and designated post requirements are desirable to assure that the entire County, rather than just particular areas, will be assured representation. Again, we note that these views were supported by leaders of the black community who accompanied you and we have been unable to discover any opposing views in the black community.

> Letter from J. Stanley Pottinger, Assistant Attorney General, to Henry J. Barnes, County Commissioner, Meriwether County, Georgia, October 25, 1974 (Complaint, Exhibit E).

As the preceding quotation makes clear, the Justice Department was swayed by the support of black community leaders for Act No. 1046. The record in the instant case, as supplemented by discovery, reveals that among the black members of the delegation urging withdrawal of objection to Act No. 1046 was Richmond Hill, Mayor of Greenville, Georgia. The record further shows that Mayor Hill was contacted by the Justice Department in July, 1974, before an objection was interposed, and that, at that time, he opposed Act No. 1046 as discriminatory. Thus, Mayor Hill's views in support of the Act were plainly unavailable at the time the original request for approval was submitted to the Attorney General. The Justice Department asserts that this change in position by a prominent black leader prompted the Civil Rights Division to reexamine previously submitted data supporting Act No. 1046 in an entirely new light. Specifically, the Department found more credible the claim that the change from district to at-large elections was motivated not by racial prejudice but by the necessity of complying with the one-man/one-vote requirement of the Constitution. In a further effort to test the credibility of this justification, the Department attempted to construct its own properly apportioned districts, and failed. Although such an exercise could have been performed before an objection was interposed, the impetus was lacking until the change in position by Mayor Hill. In short, the support of the black community, including Mayor Hill, for Act No. 1046 was unavailable to Georgia at the time of its original submission within the meaning of the applicable regulations, and this additional data justified a wholesale reexamination of the entire administrative record by the Department of Justice.

While C.F.R. §§ 51.23–51.25 (1974) can be read as restricting reconsideration of an objection to only that information which was previously unavailable, rather than permitting a reexamination of the entire record in light of the new data, the court finds a more expansive interpretation mandated by the overall legislative scheme. The "preclearance" procedure, by which a state seeks the Attorney General's approval of new voting legislation, provides an opportunity for avoiding the burden of a court action for a declaratory judgment. When the Attorney General interposes an objection, however, the state must go to court before the statute can become effective. *See* Voting Rights Act of 1965, § 5, 42 U.S.C. § 1973c (1970). If the court were to order the Attorney General to reinterpose his objection on the basis of a narrow reading of the regulations, the Department of Justice would soon find itself defending a declaratory judgment action it had no interest in winning, since it now apparently is convinced that Act No. 1046 is not discriminatory in purpose or effect.

■ The court recognizes that the regulations in question are designed to insure prompt and final action by the Attorney General, thereby indicating to the class of voters the Act protects whether or not they need prepare their own constitutional challenge to new voting legislation. *See* Memorandum accompanying Order of January 5, 1976, at 4. The interest in finality must be balanced, however, against the necessity of allowing the Act to operate in the manner prescribed by Congress. This is not to say that the Attorney General cannot enforce the regulations governing reconsideration more harshly in the future, or that the Attorney General is free to ignore the regulations, but, where, as in the case at bar, there exists some new information which

could not have been provided before an initial decision to object was made and where the court is convinced that the Attorney General has firmly concluded, on the basis of the entire administrative record, that an objection is not required, the court must find that the letter and spirit of the regulations have been fulfilled.

■ Plaintiffs' failure to prevail on count one brings an end to this action; the surviving counts of the complaint challenge actions which are not subject to judicial review. Count three alleges that by considering the need to comply with the Constitution's "one-man/one-vote" requirement the Attorney General did not apply the standard of review embodied in section five. Counts four and five allege that the record before the Justice Department does not support the conclusion that Act No. 1046 did not have the purpose or effect of denying or abridging the right to vote on account of race or color. In *Harper v. Levi*, 171 U.S.App.D.C. 321, 520 F.2d 53 (1975), the court, while finding jurisdiction to review a failure by the Attorney General to exercise the discretion granted him under section five, reserved judgment on the reviewability of "findings by the Attorney General on issues of fact, or an ultimate decision as to whether the submitting authority has discharged its burden of proving lack of discriminatory purpose or effect." *Id.* at 67; *see Id.* at 67 n. 115. Counts three, four and five, squarely raise the question not reached in *Harper*.[2]

The Administrative Procedure Act prohibits judicial intervention in agency decision making when applicable statutes preclude judicial review or commit the decision to agency discretion. § 10, 5 U.S.C. §§ 701–706 (1970). Review of substantive judgments made by the Attorney General pur-

---

**2.** Plaintiffs contend that count three requires the court to perform a review function identical to that performed in *Harper*, since it calls into question the standard applied by the Attorney General, rather than the manner in which it was applied. The letter in which the objection was withdrawn, however, makes quite clear that the Attorney General ultimately approved of the statute because it was not discriminatory

in purpose or effect. Any powers of review the court might have would be limited to ascertaining whether this standard guided the ultimate decision. *See Briscoe v. Levi*, 535 F.2d 1259 (D.C.Cir.1976). Whether the need for reapportionment to meet the "one-man/one-vote" standard is probative of a voting act's purpose or effect is a substantive, not procedural, question.

suant to section five of the Voting Rights Act flies in the face of the statute. Congress enacted section five for the purpose of increasing the protection against discrimination afforded minority voters who found traditional suits grounded on the fifteenth amendment poor vehicles for combatting racial discrimination. *See Allen v. State Bd. of Elections,* 393 U.S. 544, 548, 556, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Harper v. Levi,* 171 U.S.App.D.C. 321, 520 F.2d 53, 66–67 (1975). Congress provided additional protection by requiring that all statutes concerning voting enacted by jurisdictions covered by the Act be reviewed by the federal government and found not to be discriminatory in purpose or effect before becoming effective. At the same time, Congress attempted to protect to the greatest extent possible the interest of all voters in seeing nondiscriminatory voting reforms promptly placed into effect. *See Harper v. Levi, supra,* at 65. Congress implemented this policy by providing that a state seeking quick approval of a voting act could apply to the Attorney General and receive an answer within 60 days.

Congress also included in section five specific mechanisms for review. States dissatisfied with a determination by the Attorney General that a statute is discriminatory may have that determination reversed by a three-judge court. Review of the Attorney General's determination under the APA is implicitly precluded by the statute. *See United Jewish Org. of Williamsburgh v. Wilson,* 510 F.2d 512 (2d Cir. 1974); *Griffith v. United States,* Civil Action No. 74–648 (D.D.C. May 3, 1974). Similarly, voters dissatisfied with a decision by the Attorney General or a decision by a three-judge court may bring a traditional constitutional suit under the fifteenth amendment. Defendants contend that APA review of a determination that a voting act meets the requirements of section five is implicitly precluded by the statute where all of section five's procedures have operated properly, just as the opposite determination is implicitly precluded. The court agrees.

The instant case is far different from *Harper v. Levi,* where the Attorney General failed to perform the functions assigned him under section five. The *Harper* court accurately perceived that when the Attorney General allows a statute to become effective by failing to act at all within 60 days "the bond of protection is incomplete." 520 F.2d at 67. Inaction by the Attorney General permits a state to implement a voting change without any federal review at all, thus rendering section five of the Voting Rights Act a complete nullity. When the Attorney General actually reviews a new statute, however, minority voters are afforded the additional protection Congress intended them to have. If voters are permitted to obtain judicial review under these circumstances, the general public interest in prompt implementation of voting reforms which Congress intended to protect by writing the 60-day preclearance procedure into section five would be undermined. Such a result is as improper as the nullification of the protection afforded minority voters by the Act.

In addition to conflicting with Congress' intent to allow rapid approval of nondiscriminatory voting reforms, judicial review of a decision by the Attorney General not to object to a voting statute is illogical. Should the reviewing tribunal find that the Attorney General's decision is not supported by the administrative record, the state could then seek further review from a three-judge panel, since section five authorizes this means of review whenever the Attorney General interposes an objection to a voting statute. Not only does this procedure involve a tremendous waste of judicial resources, but it forces the Attorney General to defend a suit he does not believe in.[3]

---

**3.** Although the court need not reach the question today, it seems likely that if judicial review of a decision not to object were proper, the matter would have to be considered by a three-judge court. Three judges would be required because the reviewing court would be called on to dictate the Attorney General's decision and to interfere with the operation of a state statute by ordering interposition of an objection. *See Harper v. Levi,* 171 U.S.App.D.C. 321, 520 F.2d 53, 63 (1975). The spectre of successive three-judge courts reviewing the same statute is thus raised.

Plaintiffs make much of the fact that section four of the Voting Rights Act, 42 U.S.C. § 1973b (1970), expressly precludes judicial review of administrative determinations made pursuant to it while section five does not include such an express prohibition. The simple explanation for this discrepancy is that judicial review of actions taken under section four, which determines those jurisdictions that are to be covered by the Act, is not inherently inconsistent with the procedures outlined therein. Congress thus had to provide specific guidance on reviewability in order to clarify its intent. Section five, on the other hand, specifically outlines the review procedures available to the various parties affected by actions taken pursuant thereto. Consequently, additional specification by Congress would have been superfluous. The absence of an express preclusion clause in section five obviously gave little pause to the courts in *United Jewish Org. of Williamsburgh* and *Griffith,* both of which found APA review of a decision by the Attorney General *implicitly* precluded by the specification of alternate modes of review. *See* 510 F.2d at 520; Civil Action No. 74–648, Order of May 3, 1974. While a prayer for judicial review lodged by minority group voters raises different policy issues than similar requests made by the plaintiffs in *United Jewish Org.* and *Griffith,* the finding in each of these cases that a specific preclusion clause is not essential to a holding that APA review is prohibited applies with equal force to the case at bar. This same conclusion was reached by the only other district court to consider the issue. *See Common Cause v. Mitchell,* Civil Action No. 2348–71 (D.D.C. March 30, 1972) (Robinson, J.)

Even if section five was found not to preclude judicial review, review would be improper because the challenged decision is wholly committed to the discretion of the Attorney General. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In providing preclearance by the Attorney General as an alternative to judicial proceedings, Congress placed a large measure of trust in a coordinate branch of government. Courts should not be quick to intervene in the administrative process under such circumstances. As Judge MacKinnon noted in dissent from the majority holding in *Harper,* "It is hard to imagine a clearer instance of a matter 'committed to agency discretion by law.'" 520 F.2d at 73 (MacKinnon, J., dissenting). Whether or not Judge MacKinnon's observation correctly applied to the facts presented in *Harper,* it surely applies to the instant case, challenging substantive conclusions by the Attorney General.

An appropriate Judgment accompanies this Memorandum Opinion.

## JUDGMENT

This matter comes before the court on cross-motions for summary judgment on count one of the complaint and on defendants' motion to dismiss counts three, four and five. Upon consideration of the motions, memoranda submitted in support thereof, oppositions thereto, oral argument thereon, and the entire record herein, and for the reasons stated in the Memorandum Opinion filed by the court this date, it appears to the court that the Attorney General considered information not previously available to the submitting authority in deciding to revoke objections to Act No. 1046, and it further appears that counts three, four and five challenge actions which are not amenable to judicial review under the Administrative Procedure Act, § 10, 5 U.S.C. §§ 701–706 (1970). Therefore, it is, by the court, this 4th day of June, 1976,

ORDERED, ADJUDGED and DECREED that defendants' motion for summary judgment on count one should be, and the same hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that judgment is entered for defendants on count one; and it is further

ORDERED, ADJUDGED and DECREED that plaintiffs' motion for summary judgment on count one, should be, and the same hereby is, denied; and it is further

ORDERED, ADJUDGED and DECREED that defendants' motion to dismiss counts three, four and five should be, and the same hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that count two having previously been dismissed, this action should be, and the same hereby is, dismissed.